**LOVELADY et v RHEINLANDER**

Ohio Appeals, 1st Dist, Hamilton Co

No 5869. Decided Dec 16, 1940

**62**

Wm. C. Meyer, Cincinnati, and Kenneth Mooter, Cincinnati, for appellants.

Lawrence J. Smith, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

The controversy between these parties has been before this court heretofore on appeal in an action to contest the will of William J. Rheinlander, deceased, who was the father of these appellants, and the husband of the appellee. His will was contested on the ground that it was the result of the undue influence of the appellee herein, destroying his free agency, but as the record showed that the acts upon which the claim of undue influence was based occurred after the making of the will, the trial court held that they had no tendency to show undue influence and entered judgment sustaining the will, and this court affirmed the judgment. **14 OO 517, 28 Abs 699.** What was said in the opinion in that case must be read in the light of the issue before the court. We found no evidence of undue influence operating at the time of making the will. We did find evidence of influence exerted after the making of the will, but whether that influence was undue and destructive of the free agency of William J. Rheinlander, we were not called upon to decide, and did not decide. The opinion states it as a possibility only.

The case now before the court is predicated upon acts of the appellee subsequent to the making of the will, which it is alleged invaded the rights and damaged the appellants by imposing her will upon William J. Rheinlander, and thereby causing him to convert into cash certain real estate, which, if he had continued to own until his death would have been the subject of the devise to them, and that appellee exerted this undue influence for the very purpose of accomplishing that result. There are also allegations with reference to certain personal property, but, because of lack of proof of value and as to what became of it, we do not deem it necessary to discuss that phase of the case beyond this statement.

The appellants pray to have a trust imposed upon that portion of the proceeds of the real estate still under the control of appellee, but, as all relief of whatever nature must be predicated upon the alleged tortious acts of appellee, it is necessary for the appellants to establish the existence of the tortious acts before the nature of the relief to be awarded becomes important.

The trial court instructed a **verdict** at the close of the plaintiffs' evidence, and entered judgment for the defendant. That is the judgment that is now under review on this appeal.

The evidence in this record is substantially the same as that in the former record. The causes of action and the relief sought are entirely different. The former action was an action to contest the will. This action falls within the category of tort actions described in §870 of the Restatement of the Law. (Torts, Vol. 3, p. 405).

"A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interests of another is liable to the other for such harm if it results, except where the harm results from an outside force the risk of which is not increased by the defendant's act."

Illustrating the application of the principle, an example is stated at page 407, of the murder by an heir of an ancestor who had prepared but not signed a will in order to prevent the signing of the will, thereby depriving the plaintiff of a legacy which he would otherwise have received, and at page 586, an example is stated of a son, who as an attorney, purposely drawing an ineffective will for his mother in order to prevent a favorite nephew from receiving one-half of the estate in accordance with instructions given by the mother.

It will be observed that for a cause of action to exist, two things must concur. First, there must be a tortious act, and, second, this tortious act must be committed for the purpose of causing the harm that resulted. The tortious act charged in this case is undue influence exerted against William J. Rheinlander, which caused him to sell the real estate. But that is not enough to create a cause of action in favor of appellants. To create such a cause of action, it must also appear that such undue influence was exerted for the purpose of depriving them of the devise.

The charge against the appellee is that, for the specific purpose of working an ademption of this devise, and thereby depriving the appellants of the benefit of it and acquiring the proceeds for herself under another provision of the will, she by various means destroyed the free agency of William J. Rheinlander and caused him to sell this real estate so devised.

The question before the court now is, whether there is substantial evidence on all the elements of that sort of an action.

There is abundant evidence that the appellee, long before the sale of this real estate, manifested a jealous and hostile attitude toward these appellants, that she attempted in various ways to prevent social relations between them and their father, and to a large extent succeeded, but there is evidence that the appellants, nothwithstanding, carried on a clandestine communication with their father, and when he was sick visted him at infrequent intervals, contrary to the wish of the appellee.

The evidence shows that the father arranged for the sale of this real estate and the check for the selling price was made payable to him and deposited by him to his credit in the bank, and at the time of his death most of it still stood to his credit in a building association. Whatever withdrawals that were made were on his checks and there is no evidence that he was controlled by the appellee in such action. There is no evidence that the selling price was inadequate, or that the appellee insisted upon or was paid anything for her release of dower.

The evidence also shows that after this transaction, the father went about unattended by the appellee, and that when he did so in company with those whom he had reason to believe were not approved by the appellee, he resorted to means to conceal the fact from her. In some instances, these companions were friends of the appellants.

Counsel relies principally upon the testimony of Mrs. Greiwe to show domination by appellee of the father of appellants in the transfer of this real estate. He quotes these excerpts from her testimony:

"she was there; he was telling me how she mistreated him and all that—you know how that is, he said she forced him to sell and all that—and she wouldn't want the children to come in contact with him at all. He asked if he was dying while he was at the hospital and would I promise him that I

would call the children, which I, being a Mother, said I would."

"Yes, her own words, 'she even forced me to sell property I wanted to go to the children'. At that time I did not know the lay of the property, just where located, because I had known him a very short time. Dr. Jenson and I both were there when he kept repeating those words."

"Yes, she said he had requested it, but she was going to see they wasn't going to get anything. He had requested it but she was going to see they didn't get anything."

The part of this testimony which purports to relate to statements made by William J. Rheinlander were made from six months to more than a year after the conveyance complained of and at a time when the witness thought he was dying. They were made in the presence of Mrs. Rheinlander, according to the testimony, when they were preparing to take him to a hospital. The part that purports to relate what Mrs. Rheinlander said clearly has reference to the personal effects bequeathed to one of the appellants and took place after the death of William J. Rheinlander. It does not shed any light on her purpose as to the real estate transfer.

It will be observed that there is no testimony that William J. Rheinlander ever said at anytime anything from which an inference could be drawn that Mrs. Rheinlander's motive in forcing him to sell this real estate was to deprive the appellants of the chance of receiving the devise.

There is also no evidence in the record from which an inference can be drawn that the domination continued from the transfer to the time of his death. Indeed, the testimony is that he had full control of the proceeds of sale all the time and apparently was in full possession of his faculties, almost to the time of his death and was out of the presence of the appellee and free from any control

by her many times, and made no provision by will or otherwise whereby the appellants would receive the proceeds of sale.

(1) Laying aside the question of the competency of the testimony of William J. Rheinlander, does this testimony have any tendency to prove the essential elements of the case alleged? Reverting to the rule quoted from the Restatement, it will be observed that the gravamen of the action is the doing of a tortious act for the **purpose of causing harm to another.** There is a dearth of evidence of any such purpose in the desire of the appellee that William J. Rheinlander dispose of this real estate. While it may be inferred from the statement of William J. Rheinlander that appellee knew the legal effect of the transfer upon the provision of his will, there is no evidence of actual knowledge of this rule of law by the appellee. Assuming that she is charged as a matter of law with knowledge that the testamentary provision relating to the real estate would not operate upon its proceeds,—and that that assumption would prevail even in the absence of any proof of actual knowledge, to supply the essential element of a tortious act,—still this would fall short of evidence that the purpose was to deprive the appellants. Knowing such would be the effect, she could have had many other purposes. The record supplies one purpose which was to obtain money with which to buy property in Ripley, Ohio. This is disclosed by a profert made by appellants. The fact that this purpose was not consummated is immaterial. Another purpose was to obtain money to pay living expenses.

So we conclude that the evidence is insufficient to prove that appellee was actuated by the purpose of ▮▮▮▮▮▮ ▮ causing harm to appellants in exerting whatever force she did exert in relation to the transfer of this real estate.

(2) Then assuming that the appellee was actuated by the specific purpose of rendering ineffective the devise to appellants, the evidence seems to

fall short of the requirement of the rule relating to damage in such cases.

The rule on this subject is stated in §912 of the Restatement of the Law of Torts, as follows:

"A person to whom another has tortiously caused harm is entitled to compensatory damages therefor if, but only if, he establishes by proof the extent of such harm and the amount of money representing adequate compensation with such certainty as the nature of the tort and the circumstances permit."

Illustrating the application of this rule, it is said at page 586, that:

"A is a favorite nephew of B in whose favor B tells C, an attorney, to draw a will, devising one-half of B's property to A. C. who is B's son and heir, pretending compliance with his mother's wishes, intentionally draws an ineffective will. B dies believing that one-half of her property will go to A. A is entitled to damages from C to the extent of the net value to A of one-half of the property of which B died possessed."

It will be observed that in the illustration, the person against whom the tortious conduct was directed died under the mistaken belief engendered by such tortious conduct. There is no such circumstance in this case. The evidence is just the contrary.

This essential element of a cause of action was stated in Lewis v Corbin, 195 Mass., 520, cited by the appellants. There, the court held, as stated in the last paragraph of the syllabus:

"A declaration alleged that the executor and residuary legatee named in a certain will, that the testatrix had formed a purpose to give a legacy to the plaintiff's father, a relation of the testatrix, that the testatrix was over eighty years of age and relied upon the defendant for advice and assistance in matters of business and that he occupied a confidential relation toward her, that, intending by fraud to defeat the wish of the testatrix and to deprive the father of the plaintiff and his heirs of the legacy intended to be given by her, the defendant advised and procured her to execute a codicil void for lack of witnesses, that at the time of the attempted making of the codicil by the testatrix the plaintiff's father was dead, but that neither the defendant nor the testatrix knew that fact, that the testatrix died, leaving an estate sufficient to pay a substantial portion of the legacy, that her will was proved but the codicil was disallowed. On demurrer to the declaration, it was held, that the demurrer should be sustained because there was no allegation that, **up to the time of her death,** the intention of the testatrix to give a legacy to the plaintiff's father continued unchanged and that the fraud of the defendant continued to operate."

This is not a case in which it appears that a defendant has frustrated the testamentary intention of a decedent by acquiring an undue influence over him, destroying his capacity to act as a free agent, and maintaining such mastery at all times thereafter to the time of his death, thus precluding the decedent from doing that which he desired. The evidence shows that for many months after the sale of the devised real estate, he frequently was away from the appellee and doing things contrary to her known desires. He had many opportunities to bequeath the proceeds of this real estate and did not do so, nothwithstanding his actual knowledge of the legal effect of the sale. Under such circumstances, it cannot be said that the influence exerted by the appellee was the proximate cause of damage to the appellants. Whatever disappointment there was to their hopes resulted from the failure of their father to make further provision for them in lieu of the provision that had become ineffective.

For these reasons, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J., concur.