**KLOSTERMAN, Appellant,**

v.

**FUSSNER, Exr., Appellee.**

[Cite as *Klosterman v. Fussner* (1994), 99 Ohio App.3d 534.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14464.

Decided Dec. 30, 1994.

536

*A. Mark Segreti,* for appellant.

*Nicholas E. Subashi* and *Daniel McKnight,* for appellee, Mary H. Fussner, executor.

---

WOLFF, Judge.

Gertrude J. Klosterman appeals from a judgment of the Montgomery County Court of Common Pleas as it pertains to damages.

On January 17, 1992, Klosterman was an inpatient at Kettering Medical Center. In the early hours of the morning, she was attacked while she slept by John H. Fussner, who was also a patient in the hospital at that time. Fussner repeatedly struck Klosterman about the head, face, hands, and arms with a metal rod before hospital personnel restrained him.

Klosterman was ninety-one years old at the time of the attack. She sustained a broken hand, cuts and bruises, and an eyelid injury which required surgery. Fortunately, none of her injuries was permanent. She also reported some nightmares and hallucinations after the attack. Fussner was eighty-two years old, and he was in very poor health. He died in June 1992.

Klosterman filed a complaint against Kettering Medical Center for negligence in its failure to restrain Fussner, and against Fussner's estate, hereinafter referred to as "Fussner," for his negligent, reckless, or intentional conduct. Klosterman sought recovery for her medical expenses, pain and suffering, and hedonic damages. Before trial, she settled with Kettering Medical Center for $145,000. Kettering Medical Center also paid many of Klosterman's medical expenses related to the attack.

Klosterman's cause of action against Fussner's estate was tried to a jury. After all the evidence was presented, the trial judge granted a directed verdict on battery. The issues of proximate causation and damages went to the jury. The jury awarded Klosterman $5,000 for pain and suffering, and nothing for medical expenses or hedonic damages.

Klosterman asserts twelve assignments of error on appeal. We consider these assignments in the order which facilitates our discussion, rather than in the order of their presentation. Some of the assignments of error will be considered together due to their substantial similarity.

"VII. The trial court erred and abused its discretion in allowing inquiry and testimony concerning collateral sources of payment for medical, hospital, and nursing expenses resulting from defendant's conduct."

Under this assignment of error, Klosterman argues that the trial court erred when it allowed testimony at trial that Klosterman had not paid all of the medical expenses she incurred as a result of the attack. The trial court allowed testimony that bills had been paid by someone other than Klosterman, although it did not allow evidence regarding who had paid the bills, namely Kettering Medical Center. Klosterman claims that she was prejudiced by the introduction of this evidence because she was entitled to a judgment for the full amount of her medical expenses and other damages from Fussner, regardless of the fact that many of the bills had already been paid by Kettering Medical Center. She asserts three theories in support of such a result. First, Klosterman relies upon the collateral source rule, which prevents a tortfeasor from benefitting from payments made by a third party. Second, Klosterman's attorney asserts through oral argument that the traditional limit on recovery from joint tortfeasors does not apply to this case because Kettering Medical Center was never adjudicated liable, and therefore cannot be treated as a joint tortfeasor. Third, Klosterman claims through oral argument and her supplemental brief that she is entitled to collect the full amount of her damages from Fussner regardless of her settlement with the Kettering Medical Center and its payment of her medical expenses because Fussner was an intentional or "independent" tortfeasor, rather than a joint tortfeasor. We will address these theories in turn.

First, Klosterman argues that Fussner benefitted from the introduction of evidence at trial that a third party had paid some of her medical expenses and that such evidence was admitted in violation of the collateral source rule. The collateral source rule applies to situations in which a plaintiff has recovered some portion of her damages from an independent third party. *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. Insurance benefits are a classic example. Where the rule applies, it serves both substantive and evidentiary purposes. Substantively, the collateral source rule is an exception to the general rule in tort actions that the measure of the plaintiff's damages is that which will make her whole. Through this exception, the plaintiff is allowed to receive more than the amount of damages she actually incurred. The rationale for the exception to the general rule is that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damages which a plaintiff might otherwise recover from him. *Id.* at 107, 52 O.O.2d at 396, 263 N.E.2d at 237–238. As an evidentiary rule, the collateral source rule bars the introduction into evidence of collateral payments to the plaintiff in order to prevent the jury's consideration of such

payments in determining the amount of damages. *Id.* at 109, 52 O.O.2d at 397, 263 N.E.2d at 239.

The Kettering Medical Center is not the type of independent, third-party payor contemplated by the collateral source rule. The rule has been applied to insurance carriers, workers' compensation programs, employer disability programs, Medicare, and Social Security benefits. See, *e.g., Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504 (Social Security, workers' compensation, Medicare); *Pryor, supra* (insurance, employer benefits). It has not, to our knowledge, been applied in civil actions to co-defendants or others potentially liable in tort. Therefore, we hold that the traditional collateral source rule does not apply under the facts of this case.

Klosterman's other two arguments relate to whether Kettering Medical Center is a joint tortfeasor with Fussner. This determination could be significant because the law is well settled that, as among joint tortfeasors, a plaintiff usually is entitled to only one recovery for actual damages. Under the principles of joint and several liability, a plaintiff can take a judgment for the full amount of her damages against any one or all of the tortfeasors and can collect from any one or all of the tortfeasors up to the highest award of damages, but not more. *Price v. McCoy Sales & Serv., Inc.* (1965), 2 Ohio St.2d 131, 139–140, 31 O.O.2d 229, 233–234, 207 N.E.2d 236, 242–243, citing *Larson v. Cleveland Ry. Co.* (1943), 142 Ohio St. 20, 26 O.O. 228, 50 N.E.2d 163. This limitation, if applicable, could significantly limit Klosterman's recovery from Fussner.

■ We are unpersuaded by Klosterman's argument that Kettering Medical Center is not a joint tortfeasor because it was never adjudicated liable. Settlements and covenants not to sue are usually made before the person or entity which pays the money has had its liability actually determined by the factfinder, yet such entities are still considered liable in tort as joint tortfeasors for purposes such as contribution. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 17–18, 615 N.E.2d 1022, 1029–1031. Therefore, we hold that Kettering Medical Center's settlement with Klosterman does not preclude treating Kettering Medical Center as a joint tortfeasor.

■ In the alternative, Klosterman claims that two entities whose torts contribute to an injury are not joint tortfeasors if one acted intentionally and the other only negligently. While we reject the contention that Fussner and Kettering Medical Center may not be considered joint tortfeasors under the circumstances presented, see 59 American Jurisprudence 2d (1987), Parties, Sections 120–121; 73 Ohio Jurisprudence 3d (1987), Parties, Section 35, we do agree with Klosterman that a joint tortfeasor who acted intentionally should be treated differently as to damages from one who was merely negligent. Therefore, we

hold that the rationale of the traditional collateral source rule should be applied to cases which involve joint tortfeasors, one or more of whom acted intentionally, even though the traditional collateral source rule itself would not apply.

As we have stated, the purpose of the collateral source rule is to assure that the tortfeasor does not benefit, by way of a reduced damage award, from payments which the plaintiff receives from an independent third party. Similarly, the legislature has provided that an intentional tortfeasor has no right of contribution from other tortfeasors who did not act intentionally. R.C. 2307.31(A). The public policy reasons for R.C. 2307.31(A) and the collateral source rule are similar. The Supreme Court of Ohio interpreted the legislative policy regarding intentional tortfeasors in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 98, 15 OBR 246, 253, 472 N.E.2d 1046, 1053–1054, as follows:

"R.C. 2307.31(A) provides that '[t]here is no right of contribution in favor of any tortfeasor who has intentionally caused or intentionally contributed to * * * [an] injury or wrongful death.' Although R.C. 2307.32(F) allows for a reduction of a judgment by the amount paid by another tortfeasor in exchange for a covenant not to sue, we are persuaded that the legislature did not intend that such a reduction benefit an intentional wrongdoer. It would be nonsensical to hold that while an intentional tortfeasor may not profit by means of contribution by a fellow wrongdoer, he may nevertheless secure a reduction in the judgment against him by the sum paid to the plaintiff in exchange for a covenant not to sue. We refuse to presume that the legislature intended this incongruous result."

■ Although the court does not state this consequence explicitly, we conclude from the *Jones* decision that the Supreme Court interpreted R.C. 2307.31 as providing a narrow legislative exception to the general rule that among joint tortfeasors the plaintiff is entitled to only one recovery. Under this exception, when a plaintiff recovers from or settles with a negligent tortfeasor and subsequently obtains a judgment against an intentional tortfeasor for the same injury, the plaintiff may recover more than the amount required to make him whole because the intentional tortfeasor is not entitled to any reduction in the award against him, regardless of the amount of the previous judgment or settlement.

■ In light of the directed verdict on battery, which was an adjudication that Fussner acted intentionally, and the public policy that an intentional tortfeasor should not benefit from payments made by other tortfeasors, Fussner would not have been entitled to any contribution from Kettering Medical Center or to have any judgment against him set off by the amount paid by Kettering Medical Center. Therefore, the testimony that some of the bills had already been paid by a third party was irrelevant to the jury's determination of damages and confused the issues properly before the jury. In so ruling, we specifically reject the

contention in Fussner's supplemental brief that there is a "difference between directing a verdict on the issue of battery and deciding [that] John Fussner intentionally caused the plaintiff's injury." Battery is an intentional tort. The directed verdict on that issue constituted an adjudication that Fussner acted intentionally.

■ We hold that the trial court erred when it allowed cross-examination regarding the fact that Klosterman did not pay all of her medical expenses. We appreciate that the trial court did not direct a verdict until the close of the evidence. That fact, however, does not excuse the error. It is fundamental that a plaintiff may obtain a judgment for all of her damages against each joint tortfeasor where *all* of the tortfeasors are *at most* merely negligent. Thus, in cases involving joint tortfeasors, where one tortfeasor has settled with the injured party prior to trial, the better practice at the trial of the remaining tortfeasor will always be to insulate the jury from evidence about the settlement. If a judgment is taken against the remaining tortfeasor after trial, and his level of culpability is such that he is entitled to contribution or setoff, the trial court should then determine to what credit the remaining tortfeasor is entitled as a result of the pretrial settlement with the other tortfeasor. See Markus & Palmer, Trial Handbook for Ohio Lawyers 3d (1991), Section 34.8, at 802.

Here, the jury should have determined the amount of medical expenses attributable to the attack independently of any consideration of how much had already been paid. In light of the directed verdict on battery, about which the jury had been instructed, the conclusion is inescapable that the jury factored into its damage award the evidence that the bills had been paid, and thus it did not fulfill its duty to determine the total amount of medical expenses and other damages attributable to the attack. The result is particularly unjust because Fussner, as an intentional tortfeasor, would not have been entitled to credit for monies paid by Kettering Medical Center, the settling tortfeasor. Therefore, we hold that Klosterman did not receive a fair trial in regard to her compensatory damages.

Furthermore, the evidence that Klosterman had not paid all of her medical expenses may well have adversely affected her credibility in the eyes of the jury in regard to the damages she sought for pain, suffering, and change in lifestyle. We are mindful of the Supreme Court's holding in *Pryor, supra,* which considered the damage done to the plaintiff's case by the admission of evidence related to collateral benefits:

"The admission in evidence of the receipt of collateral benefits, after testimony as to lost wages, strongly suggested to the jury that [the plaintiff, Mrs. Pryor,] had lied to the jury and was, in fact, attempting to collect twice as to that item of damage. The injury claimed by Mrs. Pryor was such that the acceptance by the

jury of her testimony as to subjective symptoms was extremely critical to her case. * * * [B]ased upon the disclosure of such benefits, the credibility of Mrs. Pryor was attacked in argument to the jury." *Id.,* 23 Ohio St.2d at 116, 52 O.O.2d at 401–402, 263 N.E.2d at 243.

At trial, Klosterman and her son, James, each testified on direct examination regarding the medical expenses incurred as a result of the attack by Fussner. On cross-examination, Fussner's attorney elicited testimony, over the plaintiff's objections, to the effect that many of the bills had been paid by someone other than the Klostermans. As in *Pryor, supra,* the plaintiff's credibility was improperly impeached through this cross-examination. Her testimony as to subjective symptoms and changes in her lifestyle was critical to her case. It is obvious that the information that many of her bills had been paid by someone else influenced the jury's determination of Klosterman's damages. The error can be corrected only by granting a new trial on the issue of damages.

The seventh assignment of error is sustained.

"I. The trial court erred and abused its discretion in not awarding plaintiff-appellant a new trial on damages."

"III. The judgment of the trial court as to damages is contrary to law."

"IV. The judgment of the trial court as to damages is contrary to the manifest weight of the evidence."

"XII. The cumulative effect of the erroneously admitted evidence denied plaintiff a fair trial on damages."

The first, third, fourth, and twelfth assignments of error are rendered moot by our disposition of the seventh assignment of error. Therefore, pursuant to App.R. 12(A)(1)(c), we will not address these assignments.

"II. The trial court erred and abused its discretion in not directing a verdict in favor of plaintiff as to liability as a matter of law."

■ Klosterman argues that the jury's refusal to award her the full amount of medical expenses which she sought was contrary to law and that the directed verdict on battery necessitated a directed verdict on damages, including proximate cause.

■ Upon a motion for a directed verdict, if the trial court concludes that reasonable minds could come to different conclusions on the issue in question, it must overrule the motion and submit the issue to the trier of fact. *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 333, 594 N.E.2d 9, 17–18. In this case, the trial court found that reasonable minds could not disagree as to whether Fussner had committed a battery upon Klosterman. However, it

does not necessarily follow, as Klosterman contends, that all issues of proximate causation were beyond dispute.

The directed verdict on battery established that Fussner was at least *a* proximate cause of the attack. As a result, whether Kettering Medical Center was also a proximate cause should not be addressed at the new trial. However, the extent to which the attack was the proximate cause of Klosterman's various medical expenses and other alleged damages remains open to dispute.

Klosterman presented an extensive list of medical expenses to the jury, which she attributed to the attack. Some of these expenses were incurred months after the attack. For example, she included private nursing care, which was provided more than nine months after the attack. She also included pharmaceutical expenses, which only started several weeks after the attack and continued for several months. The jury heard extensive evidence about the injuries Klosterman sustained, her recovery process, her age, and her unrelated health problems. The jury had the responsibility to view the witnesses, to observe their demeanor, gestures, and voice inflections, and to use these observations to weigh the credibility of Klosterman's claims. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 367, 227 N.E.2d 212, 213. The jury could have reasonably determined that some of the medical expenses and other damages which Klosterman claimed were not proximately caused by the attack and, therefore, the motion for a directed verdict on proximate cause was properly overruled.

The second assignment of error is overruled.

"V. The trial court erred and abused its discretion in admitting evidence of defendant's decedent's character."

"VI. The trial court erred and abused its discretion in admitting evidence of defendant's decedent's mental and physical condition."

"VIII. The trial court erred and abused its discretion in admitting evidence of the failure of the Kettering police to file criminal charges against defendant's decedent."

"IX. The trial court erred and abused its discretion in admitting evidence that the plaintiff agreed with the decision not to pursue criminal charges."

"X. The trial court erred and abused its discretion in allowing the defendant's counsel to inquire and argue that Kettering Medical Center was at fault for not restraining defendant's decedent."

"XI. The trial court erred and abused its discretion in admitting opinion testimony of psychiatrist Dr. Lunderman."

Under these assignments of error, Klosterman argues that various evidence was improperly admitted at trial that prejudiced her case. All of the testimony in question was offered prior to the trial court's directed verdict on the issue of battery and was related to Fussner's culpability. The directed verdict left undisputed the fact that Fussner had committed the acts of which he was accused and that he was responsible for those acts. The directed verdict has not been challenged on appeal and, therefore, it will remain the law of the case when the trial court conducts a new trial on damages. As a result, the evidence challenged under these assignments of error will be irrelevant and, hence, inadmissible at the new trial.

The fifth, sixth, eighth, ninth, tenth and eleventh assignments of error are overruled.

The judgment of the trial court as to damages is reversed. The matter will be remanded for a new trial on the issues of proximate causation and damages. The judgment is otherwise affirmed.

*Judgment revered in part*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.