196 F.3d 617 (6th Cir. 1999)
 Pinney Dock & Transport Company (98-3178) and Litton Industries, Inc. (98-3179), Plaintiffs,
v.
Penn Central Corporation, Defendant/Cross-Claim Defendant-Appellee,
Bessemer & Lake Erie Railroad Company, Defendant/Cross-Claim Plaintiff-Appellant.
 Nos. 98-3178, 98-3179
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: March 12, 1999
Decided and Filed: November 16, 1999
 
 Appeal from the United States District Court for the Northern District of Ohio at Youngstown, Nos. 80-01733; 81-00372--Peter C. Economus, District Judge.
 Peter M. Fishbein, KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, New York, New York, Anthony J. Celebrezze, Jr., DINSMORE & SHOHL, Columbus, Ohio, James J. Capra, Jr., ORRICK, HERRINGTON & SUTCLIFFE, New York, New York, Michael L. Cioffi, AMERICAN PREMIER UNDERWRITERS,INC., Cincinnati, Ohio, for Defendant/Cross-Claim Defendant-Appellee.
 Thomas S. Kilbane, Stacy D. Ballin, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, Timothy W. Bergin, SQUIRE, SANDERS & DEMPSEY, Washington, D.C., for Defendant/Cross-Claim Plaintiff-Appellant.
 Before: JONES, SILER, and DAUGHTREY, Circuit Judges.
 OPINION
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 These two consolidated appeals concern a hotly contested antitrust action -- what is known as the "Iron Ore Conspiracy" -- with a long litigation history dating back to 1980. The parties in the district court were as follows:
 
 
 2
 The Pinney Dock The Litton Industries
Antitrust Litigation Antitrust Litigation
Plaintiff: Pinney Dock Plaintiff: Litton Industries,
&("Pinney Dock") Transport Co. Inc. ("Litton")
Co-Defendants: Penn Co-Defendants: Penn
("Penn Central"); and Central Corp. Central and B&LE 
Bessemer & Lake Erie
R.R. Co. ("B&LE")
 
 
 3
 Because Penn Central was in bankruptcy during much of the time that these cases were litigated, the Pinney Dock and Litton plaintiffs (collectively, "plaintiffs") were afforded relief against B&LE alone. Ultimately, plaintiffs settled with B&LE for an amount close to $30 million dollars. Believing that co-defendant Penn Central should pay a proportionate share of the settlement monies, B&LE filed multiple cross-claims in the district court for indemnification and contribution from Penn Central. The district court denied such relief; this appeal resulted. B&LE is now the appellant and Penn Central the appellee. For the reasons that follow, we find in favor of Penn Central, and therefore affirm.
 
 I.
 
 4
 After years of litigation, resulting in a multi-district litigation jury trial (the "MDL-587" proceeding was tried in the Eastern District of Pennsylvania), B&LE was found liable for approximately $600 million in damages. That amount was reduced in settlement, with regard to the Pinney Dock and Litton plaintiffs, to approximately $30 million. The two consolidated appeals now before us concern B&LE's efforts to collect some or all of that multi-million dollar sum from Penn Central via cross-claims asserting state and federal theories of contribution and indemnification[1].
 
 
 5
 B&LE initially filed four cross-claims against Penn Central for: (1) indemnification under federal law; (2) indemnification under Ohio law; (3) contribution under federal law; and (4) contribution under Ohio law. The first three of these cross-claims were dismissed by Judge Thomas - the district judge then presiding over this matter - in 1982. That left remaining for review just B&LE's fourth cross-claim, i.e., contribution under Ohio law. The parties then filed motions relative to this remaining cross-claim. B&LE sought a voluntary dismissal of the claim under Fed. R. Civ. P. 41(a)(2), so that the claim could be re-filed in state court (the Ohio Court of Common Pleas); the state court was where B&LE, proceeding as a plaintiff, had originally sought recovery of some or all of the $30 million dollars it had paid out to the Pinney Dock and Litton plaintiffs. Penn Central -- acting on the assumption that Judge Thomas would deny the motion for voluntary dismissal and retain jurisdiction over B&LE's state law contribution cross-claim -- filed a motion for summary judgment against that claim.
 
 
 6
 Prior to his retirement from judicial service in late 1997, Judge Thomas denied the motion for voluntary dismissal, ruling, inter alia, that dismissal of the cross-claim was not mandated by the supplemental jurisdiction statute, 28 U.S.C. § 1367, or United Mine Workers v. Gibbs, 383 U.S. 715 (1966). That decision kept the cross-claim before the district court, thus necessitating a ruling on Penn Central's motion for summary judgment. Thereafter, the case was transferred to Judge Economus, who granted Penn Central's summary judgment motion in January 1998, thus terminating the case upon the district court's docket.
 
 
 7
 This appeal challenges Judge Thomas's 1982 Dismissal Order premised upon Rule 12(b)(6), Judge Thomas's 1997 Voluntary Dismissal Order premised upon Fed. R. Civ. P. 41(a)(2), and Judge Economus's 1998 Summary Judgment Order premised upon Fed. R. Civ. P. 56. On appeal, B&LE argues that the district court erred by: (1) dismissing in the 1982 Order B&LE's state and federal indemnification cross-claims against Penn Central; (2) denying in the 1997 Order B&LE's motion to dismiss voluntarily its last remaining cross-claim, i.e., its cross-claim for contribution from Penn Central under Ohio law; and (3) finding in the 1998 Order that B&LE is not entitled to contribution under Ohio Rev. Code § 2307.32(A) because B&LE intentionally caused injury to Pinney and Litton. These issues are addressed in turn.
 
 II.
 A. Dismissal of B&LE's Three Cross-Claims
 
 8
 (The 1982 Order)
 
 
 9
 Judge Thomas's 1982 Order dismissed under Fed. R. Civ. P. 12(b)(6) B&LE's cross-claims against Penn Central for indemnification under federal law, indemnification under state law, and contribution under federal law. Although B&LE initially challenged the dismissal of all three cross-claims, B&LE clarified at oral argument that it no longer appeals the dismissal of its cross-claim for contribution under federal law. Accordingly, we need only review Judge Thomas's dismissal of B&LE's indemnification cross-claims brought under federal and state law.
 
 
 10
 The granting of a Rule 12 dismissal motion is reviewed de novo using the same motion to dismiss standard applied in the district court. Performance Contracting, Inc. v. Seaboard Sur. Co., 163 F.3d 366, 369 (6th Cir. 1998). In ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the factual allegations in the complaint must be taken as true and construed in a light most favorable to the plaintiff (in this case, in a light most favorable to B&LE). Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can proveno set of facts in support of his claim which would entitle him to relief." Achterhof v. Selvaggio, 886 F.2d 826, 831 (6th Cir. 1989) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir. 1994).
 
 
 11
 As both parties agree, this issue is controlled by this Court's recent decision in Wills Trucking, a companion indemnification case between B&LE and Penn Central. See supra note 1. At the time the briefs were filed in this case, Wills Trucking had been argued, but had not yet been decided. The Wills Trucking holding, however, makes clear that indemnification under federal and state law is not permitted between joint tortfeasors, and "is available only when the party seeking indemnification is an innocent actor whose liability stems from some legal relationship with the truly culpable party... ." Wills Trucking, 1999 WL 357775, at *3(citing Ohio Cas. Ins. Co. v. Ford Motor Co., 502 F.2d 138, 140 (6th Cir. 1974)). The Wills Trucking panel held that B&LE was not such an "innocent actor" because B&LE was found by the MDL-587 jury to have knowingly, voluntarily and intentionally participated in the Iron Ore conspiracy, see id. at *2; and that finding was affirmed by the Third Circuit Court of Appeals, see id. The Wills Trucking panel thus affirmed the district court's Rule 12(b)(6) dismissal of B&LE's indemnification claims filed against Penn Central. See id. at *5.
 
 
 12
 Recognizing that the Wills Trucking holding applies with equal force in this case, we find that B&LE's federal and state indemnification cross-claims against Penn Central fail here as well. Judge Thomas thus acted correctly in dismissing those claims under Rule 12(b)(6), and his 1982 Order merits affirmance.
 
 
 13
 B. Denial of B&LE's Motion for Voluntary Dismissal
 
 
 14
 (The 1997 Order)
 
 
 15
 B&LE next argues, in reliance upon Musson Theatrical, Inc. v. Federal Express Corp. ("Musson"), 89 F.3d 1244 (6th Cir. 1996), as amended, 1998 WL 117980 (6th Cir. Jan. 15, 1998), that Judge Thomas abused his discretion by denying B&LE's Fed. R. Civ. P. 41(a)(2) motion to dismiss voluntarily its state law contribution cross-claim filed against Penn Central. A district court's decision to deny a Rule 41(a)(2) motion is reviewed for an abuse of discretion. Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994).
 
 
 16
 B&LE argues that the district court had no choice but to dismiss the supplemental cross-claim once the court resolved the federal claims over which it had original jurisdiction (i.e., the federal antitrust claims, which were settled between plaintiffs and B&LE). We disagree. Although Judge Thomas could have dismissed the cross-claim once the federal-question claims were resolved, see 28 U.S.C. §1367(c)(3) (authorizing such a dismissal without prejudice), he was, as Musson instructs, not obligated to do so. Judge Thomas acted within his discretion for several reasons. As a preliminary matter, this is not a narrow question, for district courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." Musson, 89 F.3d at 1254. Musson also clarifies that the district judge's broad discretion depends on "judicial economy, convenience, fairness, and comity." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Each of these factors weighed in favor of Judge Thomas denying B&LE's motion and retaining jurisdiction over B&LE's cross-claim, given that the Judge had presided over the case for more than fifteen years at the time the dismissal was sought, and was intimately familiar with the parties and the proceedings. Additionally, this is not a case that falls under either of the two procedural scenarios outlined in Musson: dismissal under Fed. R. Civ. P.12(b)(1) or 12(b)(6). Musson instructs that, where dismissal occurs under Rule 12(b)(1) and on subject matter jurisdiction grounds, dismissal of a remaining supplemental state law claim must occur because jurisdiction over that claim never existed in the first place. See Musson, 89 F.3d at 1255. Where, on the other hand, dismissal occurs under Rule 12(b)(6) for failure to state a claim, a "strong presumption" arises in favor of dismissing a remaining supplemental state law claim because Rule 12(b)(6) dismissals typically occur "early in the proceedings, when the court has not yet invested a great deal of time into resolution of the state claim[]." Id. B&LE argues that one or both of these procedural scenarios should be found to control here, but neither applies. As is noted above, plaintiffs' underlying antitrust claims were settled on the merits, not dismissed on lack of jurisdiction grounds or for failure to state a claim.
 
 
 17
 B&LE also argues that equitable considerations -- especially the existence of its Common Pleas case in the Ohio courts -- should have "tipped the scales" in favor of granting its Rule 41 motion. Again, we disagree. Musson provides for the retention of otherwise dismissible supplemental state law claims (and thus a rebutting of the "strong presumption") whenever "unusual circumstances" exist -- circumstances without which, for example, the case might be "relegat[ed] ... for trial in the state court." Musson, 89 F.3d at 1255 (quoting Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir. 1975)). Such unusual circumstances include, among others, instances where the court and parties "spent years preparing" the case for trial. Id. (quoting Purgess v. Sherrock, 33 F.3d 134, 139 (2nd Cir. 1994)). That is precisely what occurred here: although Pinney Dock and Litton filed their complaints in 1980 and 1981, respectively, the MDL-587 verdict was not rendered until 1989, more than eight years later. See In re Lower Lake Erie Iron Ore Antitrust Litig., 759 F.Supp. 219, 222-23 (E.D. Pa. 1991)(aff'd in part, rev'd in part, 998 F.2d 1144 (3d Cir. 1993); compare Musson, 89 F.3d at 1255-56 (finding no "unusual circumstances" shown where case was litigated in less than six months). While, admittedly, the Musson panel found "extremely compelling" the existence of a state court case at the time dismissal was considered by the district court, Musson, 89 F.3d at 1256, the "unusual circumstances" analysis, when viewed together with the "judicial economy, fairness, convenience and comity" factors, outweighs that consideration. Judge Thomas thus did not abuse his discretion by denying B&LE's Rule 41(a)(2) motion for voluntary dismissal.
 
 
 18
 C. Summary Judgment against B&LE's State Law
 
 Contribution Cross-Claim (The 1998 Order)
 
 19
 We last turn to Judge Economus's 1998 Order granting summary judgment in favor of Penn Central on the merits of B&LE's state law contribution cross-claim. Judge Economus found that B&LE could not obtain contribution from Penn Central under Ohio law because B&LE was an intentional tortfeasor. We review that summary judgment decision de novo using the same Rule 56 standard applied by the district court. Barrett v. Harrington, 130 F.3d 246, 251 (6th Cir. 1997), cert. denied, 523 U.S. 1075, 118 S.Ct. 1517 (1998).
 
 
 20
 That standard is as follows: A motion for summary judgment should be granted if the evidence submitted to the district court demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson,477 U.S. at 248. The court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." Id. at 249. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.
 
 
 21
 B&LE sought contribution from Penn Central under Ohio Rev.Code §2307.32(A), which provides, in relevant part, that "[t]here is no right of contribution in favor of any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss [in question] . . . ." This statute has been interpreted to mean precisely what it says, i.e., that intentional tortfeasors causing a plaintiff's harm cannot recover contribution under § 2307.32(A). See, e.g., Klosterman v. Fussner, 651 N.E.2d 64, 68 (Ohio Ct. App. 1994)(referencing Ohio Rev. Code § 2307.31(A), now renumbered as §2307.32(A)). Under Ohio law, civil conspiracy is an intentional tort. See Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868 (Ohio 1998), cert denied, 119 S.Ct. 1357 (1999). Relief is thus foreclosed by Wills Trucking, where B&LE was found to have participated in the Iron Ore conspiracy, thereby intentionally causing plaintiffs' antitrust injuries.[2] Accordingly, § 2307.32(A) bars B&LE's state law contribution cross-claim against Penn Central, and Judge Economus's summary judgment finding merits affirmance.
 
 III. Conclusion
 
 22
 The district court's three rulings, therefore, are each AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The district court summarized the procedural history of these two cases as follows:
 In 1981, a federal grand jury in the District of Columbia returned an indictment charging B&LE and other railroads with a criminal violation of the Sherman Act for their participation in the Iron Ore Conspiracy. . . . B&LE subsequently pleaded nolo contendere [to intentionally causing antitrust harm to the Pinney Dock and Litton plaintiffs,] and was later convicted and fined. Twelve civil cases were filed against B&LE and other railroads by parties claiming to have been injured by the conspiracy. The Pinney and Litton cases. . .were the first to be filed. The ten later cases were consolidated and tried in the United States District Court for the Eastern District of Pennsylvania [in MDL-587]. All of the defendants except B&LE settled those cases prior to or during trial. A jury found B&LE liable to the MDL 587 plaintiffs for violating both the Sherman Act and the similar Ohio Valentine Act[,] and a second jury assessed damages against it for approximately $600 million. The [Pinney Dock and Litton] cases. . . were not consolidated and tried in MDL[-]587. B&LE settled those cases with Pinney and Litton for approximately $30 million after the MDL[-]587 jury verdicts....
 Pinney Dock & Transp. Co. v. Penn Cent. Corp., 991 F.Supp. 908, 910 (N.D.Ohio 1998) (brackets added; footnotes omitted). For additional background history of this matter, see Wills Trucking, Inc. v. Baltimore & Ohio R.R. Co., No. 97-4067, 1999 WL 357775, at *1-2 (6th Cir. May 14, 1999); Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1449-52 (6th Cir. 1988); In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1152-56 (3d Cir. 1993).
 
 
 [2]
 In light of the Wills Trucking holding, we need not reach the merits of B&LE's argument that its nolo contendere plea cannot be used here, under the res judicata or collateral estoppel doctrines, as evidence of its intent to cause plaintiffs' harm.