[Cite as *Ginn v. Stonecreek Dental Care*, 2017-Ohio-4370.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

DAVID R. GINN, DDS,                          :

    Plaintiff-Appellant,                    :          CASE NO.   CA2016-10-014

                                                 :          O P I N I O N
    - vs -                                                          6/19/2017

                                                 :

STONECREEK DENTAL CARE,            :

    Defendant-Appellee.                   :


CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12 CVH 00459


Russell A. Kelm, 37 West Broad Street, Suite 860, Columbus, Ohio 43215, for plaintiff-appellant

Wood & Lamping, LLP, Jeffrey R. Teeters, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202-2491, for defendant-appellee


**HENDRICKSON, P.J.**

{¶ 1}   Plaintiff-appellant, David R. Ginn, DDS, appeals a decision of the Fayette County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Stonecreek Dental Care ("Stonecreek Dental").

{¶ 2}   We have previously detailed the facts of appellant's case as follows:

{¶ 3}   This appeal stems from the sale of a dental practice owned by R. Douglas

Martin, DDS, located in Washington Court House. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-015, 2015-Ohio-1600, ¶ 2 (*Ginn I*). In 2010, Dr. Ginn was considering expanding his current dental practice, also located in Washington Court House, and Dr. Martin was interested in selling his practice. *Id.* Following negotiations, Dr. Ginn and Dr. Martin entered a contract for sale (contract) in which Dr. Ginn purchased "[a]ll right, title and interest in and to the name R. Douglas Martin, DDS, which name Seller warrants and represents to be the only trade name and trademark used by Seller in the course of its business" (goodwill provision). *Id.* The contract provided Dr. Martin was prohibited from engaging in business "within thirty (30) miles" of Dr. Ginn's practice for "five (5) years" from October 2010 (noncompete provision). *Id.* Dr. Ginn and Dr. Martin also entered a separate employment agreement whereby Dr. Martin was to work for Dr. Ginn one day per week. *Id.* For various reasons, the relationship between Dr. Ginn and Dr. Martin deteriorated, and Dr. Martin's employment ended in April 2011. *Id.*

{¶ 4} Shortly after Dr. Martin stopped working for Dr. Ginn, Dr. Martin began working for Stonecreek Dental one day per week in its Chillicothe office, which is located within 30 miles of Dr. Ginn's dental practice. *Id.* at ¶ 3. Dr. Clark Sanders, DDS, an owner of Stonecreek Dental, communicated with Dr. Martin during his hiring process. *Id.* A business consultant for Stonecreek Dental also communicated with Dr. Martin. *Id.* In September 2011, Stonecreek Dental produced radio advertisements using Dr. Martin's voice to encourage people to see the dentists at Stonecreek Dental. *Id.* Stonecreek Dental broadcasted these radio advertisements in nearby areas, including Washington Court House. *Id.*

{¶ 5} On November 15, 2012, Dr. Ginn filed a complaint against Dr. Martin and Stonecreek Dental. *Id.* at ¶ 4. Relevant to this appeal, Dr. Ginn alleged that Stonecreek Dental tortiously interfered with his business relationships because it "induced and assisted

Defendant Martin in his wrongful conduct to cause Plaintiff's patients to cease their business relationship with Plaintiff." *Id.* Additionally, Dr. Ginn alleged Stonecreek Dental knew of the contractual relationship between Dr. Ginn and Dr. Martin, yet tortiously interfered with the contract. *Id.* Specifically, Dr. Ginn claimed Stonecreek Dental tortiously interfered with the contract by employing Dr. Martin within the geographic area prohibited by the noncompete provision and by using Dr. Martin's voice in radio advertisements, which caused a loss of business goodwill. *Id.*

{¶ 6} A jury trial began on May 20, 2014. *Id.* at ¶ 5. At trial, Dr. Ginn elicited testimony from Dr. Sanders that Dr. Martin had provided Dr. Sanders with a copy of the contract and Dr. Martin assured Dr. Sanders working for Stonecreek Dental would not be in violation of the contract. *Id.* Furthermore, Dr. Sanders testified that per MapQuest, Dr. Ginn's office was more than 30 miles away from Stonecreek Dental's office. *Id.* Dr. Sanders admitted the radio advertisements were produced for Stonecreek Dental using Dr. Martin's name and voice. *Id.* An exhibit introduced at trial revealed the advertisements using Dr. Martin's name and voice were broadcast in Washington Court House beginning in September 2011 and ending in January 2013. *Id.*

{¶ 7} Dr. Ginn testified on his own behalf detailing his lost profits and stating that the only difference in the way he practiced dentistry was that Dr. Martin had left. *Id.* at ¶ 6. Dr. Ginn did not specifically identify any of his patients who left his treatment for Stonecreek Dental. *Id.* Dr. Ginn admitted people have a choice as to which dentist they choose to see and stated there are many reasons people stop seeing a specific dentist. *Id.* Furthermore, Dr. Ginn opined that he does not keep a record of where patients transfer. *Id.* However, Dr. Ginn also testified that he had always treated his patients well but that his business began declining around the time Stonecreek Dental's radio advertisements began. *Id.*

{¶ 8} At the conclusion of Dr. Ginn's case, both Stonecreek Dental and Dr.

Martin moved for a directed verdict. *Id.* at ¶ 7. Dr. Martin argued Dr. Ginn failed to allege facts supporting his breach of contract claim as well as that such claim proximately caused any damages. *Id.* Dr. Martin further argued Dr. Ginn failed to establish damages to a reasonable degree of certainty. *Id.* The trial court denied Dr. Martin's motion. *Id.* However, the trial court granted a directed verdict in favor of Stonecreek Dental, finding Dr. Ginn failed to show Stonecreek Dental possessed the requisite intent to interfere. *Id.*

{¶ 9} With respect to Dr. Martin, the trial proceeded and the jury found he breached the noncompete provision and awarded Dr. Ginn $125,000 in damages, plus interest. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2015-01-001 and CA2015-01-002, 2015-Ohio-4452, ¶ 5 (*Ginn II*). We affirmed Dr. Martin's subsequent appeal from this judgment. *Id.* at ¶ 31, *jurisdiction declined by* 145 Ohio St.3d 1422, 2016-Ohio-1173. Dr. Ginn appealed the trial court's decision to grant a directed verdict in favor of Stonecreek Dental, which we affirmed in part and reversed in part. *Ginn I* at ¶ 37. We affirmed the trial court's judgment granting a directed verdict in favor of Stonecreek Dental regarding Dr. Ginn's tortious interference with business relationships claim, reversed as to Dr. Ginn's tortious interference with contract claim, and remanded the matter for further proceedings. *Id.*

{¶ 10} On remand, the trial court set a trial date in June 2016, which the trial court continued because Stonecreek Dental moved for summary judgment on the basis the trial would be simply relitigating the damages already awarded from the previous trial. In July 2016, Dr. Ginn moved to compel discovery of financial information from Stonecreek Dental as well as moved for leave to amend his complaint to request emotional distress damages. The trial court orally granted Dr. Ginn's motion to compel discovery. Before Dr. Ginn received the requested information, the trial court granted Stonecreek Dental's motion for summary judgment, denied Dr. Ginn's motion for leave to amend his complaint, and this

appeal followed.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO STONECREEK DENTAL IN A CASE IN WHICH THIS COURT PREVIOUSLY REVERSED A DIRECTED VERDICT FOR STONECREEK [DENTAL] AND REMANDED THE CASE FOR TRIAL.

{¶ 13} Dr. Ginn presents several issues for review under his first assignment of error. Dr. Ginn contends the trial court erred in granting summary judgment in favor of Stonecreek Dental pursuant to the single satisfaction rule because Stonecreek Dental's actions were intentional and Stonecreek Dental waived the affirmative defense of collateral estoppel; therefore, the proper analytical framework is pursuant to the collateral source rule. Additionally, Dr. Ginn argues, if the single satisfaction rule does apply, he should still be able to seek recourse for uncompensated damages suffered due to Stonecreek Dental's intentional interference. Dr. Ginn further contends the trial court erred by finding he failed to provide new evidence of such uncompensated damages.

{¶ 14} We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14. Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). The moving party bears the initial

burden of demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. *Id.*

{¶ 15} Dr. Ginn contends Stonecreek Dental committed the intentional tort of tortious interference with contract; therefore, the trial court's decision that the collateral source rule did not apply allowed Stonecreek Dental to enjoy the benefits received by its intentional interference without being subject to liability. The elements of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999).

{¶ 16} A plaintiff asserting tortious interference with contract may, upon competent proof, recover any damages proximately caused by the tortfeasor's misconduct. *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App.2d 177, 181 (1st Dist.1977). These damages may include, but are not limited to, damages otherwise recoverable in an action for breach of contract. *Id.* Accordingly, "the mere existence of a plaintiff's inchoate cause of action against one party for breach of contract does not foreclose an action in tort against another party for all damages suffered by reason of the latter's inducement of such a breach." *Id.* at 182. However, "the fact that a plaintiff has separate and independent causes of action in contract and in tort does not permit him to recover more than the amount of damage actually suffered as a consequence of the injury resulting from the wrongful breach of his contract." *Id.* A plaintiff must "allege and prove the existence of *additional* damages attributable" to the defendant to be awarded damages on each of the separate claims. (Emphasis sic.) *Id.*

{¶ 17} Traditionally, "an injured party is entitled to only one satisfaction for his injuries,

and th[e] receipt of full compensation from one of several persons whose concurrent acts of negligence are the basis of a suit for damages for personal injuries releases all." (Citation omitted.) *Seifert v. Burroughs*, 38 Ohio St.3d 108, 110 (1988). Common law recognizes this principle as the single satisfaction rule. In such instance, the question becomes whether the initial judgment fully compensated the appellant for all his injuries or for merely part of them. *Id.* In the latter case, the appellant would be entitled to pursue damages for the remainder of his injuries. *Id.*

{¶ 18} The collateral source rule is the judicial refusal to credit to the benefit of the wrongdoer money or services received by a plaintiff from an independent third party. *Pryor v. Webber*, 23 Ohio St.2d 104, 107 (1970). "Substantively, the collateral source rule is an exception to the general rule in tort actions that the measure of the plaintiff's damages is that which will make [him] whole." *Klosterman v. Fussner*, 99 Ohio App.3d 534, 538 (2d Dist.1994). The rationale for this exception is to prevent the benefits the plaintiff receives from an independent source from reducing the amount of damages a plaintiff may recover from another wrongdoer. *Pryor* at 107. In Ohio, the exception has been applied to "insurance carriers, workers' compensation programs, employer disability programs, Medicare, and Social Security benefits." *Klosterman* at 539, citing *Sorrell v. Thevenir*, 69 Ohio St.3d 415 (1994). The exception has yet to be extended in civil actions to co-defendants or others potentially liable in tort. *Klosterman* at 539.

{¶ 19} Nevertheless, the Second District in *Klosterman* found the rationale of the collateral source rule extends to intentional tortfeasors, including situations where the rule would not traditionally apply. *Id.* at 540. We find such extension of the collateral source rule consistent with its purpose to assure a "tortfeasor does not benefit, by way of a reduced damage award, from payments which the plaintiff receives from an independent third party." *Id.* Likewise, this purpose is consistent with R.C. 2307.25(A), which provides an intentional

tortfeasor no right of contribution from other tortfeasors who merely acted negligently.

{¶ 20} Stonecreek Dental contends Dr. Ginn failed to allege additional damages attributable solely to the wrongful acts of interference by Stonecreek Dental thereby precluding any further recovery by Dr. Ginn. Stonecreek Dental references the jury instructions charging the jury with determining damages, including lost profits due to the breach of contract, that were proximately caused by, and the natural and probable results of, any claimed breach of contract. Dr. Ginn's original complaint alleged harm for his tortious interference claim by loss of business goodwill, loss of patients, diminution of business value, and lost profits. Therefore, at first glance it would appear the trial court charged the jury with considering the alleged damages in their entirety and the jury returned a single judgment on only the breach of contract claim. In which case, such judgment would serve as full satisfaction of the injury attributable to the breach of contract and tortious interference claims, precluding further recovery without alleging additional damages. *See Martin v. Jones*, 4th Dist. Adams No. 14CA992, 2015-Ohio-3168, ¶ 70 (finding plaintiff may not recover duplicative damages simply because they alleged separate causes of action in contract and tort resulting from a breach of contract); *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App.2d 177, 182 (1st Dist.1977) (stating plaintiff may not recover more than the amount of damage suffered).

{¶ 21} However, this case presents a unique set of circumstances because the trial court granted a directed verdict to Stonecreek Dental during the first trial at the close of Dr. Ginn's case-in-chief. Therefore, the trial court charged the jury to consider only those damages allocable to Dr. Martin's wrongdoing. *See, e.g.*, *Seifert v. Burroughs*, 38 Ohio St.3d 108, 111 (1988) (finding jury considered total entitlement for injuries where jury "had before it the entire list of injuries suffered by appellant and not a mere portion allocable to [one party] alone"). Contrary to Stonecreek Dental's assertion otherwise, the fact Dr. Ginn alleged

similar injuries against each party stemming from Dr. Martin's breach does not preclude Dr. Ginn from further pursuit of damages for injuries allocable to Stonecreek Dental because the jury only considered damages allocable to Dr. Martin. Moreover, since we previously found the collateral source rule applicable, Stonecreek Dental would not be entitled to reap the benefits of any wrongdoing by way of a reduced damage award due to the judgment rendered against Dr. Martin.

{¶ 22} Stonecreek Dental further asserts the trial court properly granted summary judgment because the jury in the first trial determined the full measure of Dr. Ginn's damages, and without additional evidence of damages, no new factual dispute exists and entitles Stonecreek Dental to judgment as a matter of law. However, as analyzed above, the jury in the first trial did not make findings as to Stonecreek Dental's liability for Dr. Ginn's tortious interference claim. Therefore, a genuine issue of material fact exists as to whether Stonecreek Dental tortiously interfered with the contract, and if a jury finds it did, the extent of any damages allocable to such action.

{¶ 23} Next, Stonecreek Dental asserts the doctrine of collateral estoppel precludes Dr. Ginn from relitigating his damages. Whereas, Dr. Ginn contends Stonecreek Dental waived such defense because it failed to timely raise the affirmative defense by not filing an answer. A review of the record reveals Dr. Ginn filed his claims against "Stonecreek Dental Care" and a timely answer was filed by "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC". The mere fact Stonecreek Dental captioned its responsive pleading pursuant to its name as a legal entity, rather than using its trade name, as it appears in Dr. Ginn's complaint, does not bar Stonecreek Dental from meeting its responsive pleading requirements. *Ebbing v. Stewart*, 12th Dist. Butler No. CA2016-05-085, 2016-Ohio-7645, ¶ 26. Moreover, contrary to Dr. Ginn's claim otherwise, Stonecreek Dental did not waive the affirmative defense of estoppel, as it specifically raised estoppel in its answer.

**{¶ 24}** The doctrine of res judicata is composed of two concepts: claim preclusion, also referred to as "estoppel by judgment," and collateral estoppel, also referred to as "issue preclusion." *Balboa Ins. Co. v. S.S.D. Distrib. Sys.*, 109 Ohio App.3d 523, 527 (12th Dist.1996). "Claim preclusion bars the relitigation of the same cause of action between the same parties." *Id.* Whereas, collateral estoppel prevents relitigation in a different cause of action of an issue that has been actually and necessarily litigated and determined. *Id.* Generally, in Ohio, a requisite of collateral estoppel is mutuality of parties. *Id.*, citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193 (1983), paragraph one of the syllabus. However, the main principle throughout the determination of the applicability of collateral estoppel "is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense", and thus, it is left to the sound discretion of the trial court to permit an exception to the mutuality requirement where justice so requires. *Goodson* at 200-01; *Balboa* at 527. To successfully assert collateral estoppel, a party must plead and prove the following elements:

> (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;
>
> (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and
>
> (4) The issue must have been identical to the issue involved in the prior suit.

*Balboa* at 528.

**{¶ 25}** The original complaint names Dr. Martin and Stonecreek Dental as defendants and both defendants remained parties to this action throughout Dr. Ginn's presentation of his case-in-chief. Then, the trial court granted a directed verdict in favor of Stonecreek Dental, which we subsequently reversed, finding Dr. Ginn presented sufficient evidence to pursue his

- 10 -

tortious interference with contract claim. Meanwhile, the original trial continued with Dr. Martin, who the jury rendered judgment against with respect to Dr. Ginn's breach of contract claim and found for Dr. Martin on Dr. Ginn's tort claims. This unique procedural posture posits the question whether justice so requires the application of the doctrine of collateral estoppel via an exception to the mutuality requirement.

{¶ 26} Considering our analysis above with respect to the jury's consideration of damages and our previous finding the trial court erred by granting a directed verdict for Stonecreek Dental, we find that justice does not require applying an exception to the mutuality requirement. It is clear the jury considered the issue of damages with respect to claims asserted against Dr. Martin. However, as analyzed above, the jury did not consider such issue with respect to claims asserted against Stonecreek Dental because it was no longer a party to the action. Therefore, collateral estoppel is inapplicable to the present case.

{¶ 27} Dr. Ginn alternatively argues, even if the single satisfaction rule and collateral estoppel are applicable, the trial court still erred by granting summary judgment in favor of Stonecreek Dental because Dr. Ginn provided new evidence of his uncompensated damages. However, due to our findings with respect to Dr. Ginn's first assignment of error, his alternative arguments are now moot.

{¶ 28} Accordingly, Dr. Ginn's first assignment of error is sustained.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED IN FAILING TO GRANT DR. GINN LEAVE TO AMEND HIS COMPLAINT TO EXPLICITLY DEMAND EMOTIONAL DISTRESS DAMAGES.

{¶ 31} Dr. Ginn contends the trial court erred by denying his motion for leave to amend his complaint to include a demand for emotional distress damages stemming from his tortious interference claim. In so doing, Dr. Ginn argues justice required granting his motion for leave to amend because such amendment would not cause undue delay and would not

be futile.

{¶ 32} Pursuant to Civ.R. 15(A), a plaintiff may amend its complaint with leave of court which "shall [be] freely give[n] * * * when justice so requires." An appellate court will not reverse a trial court's decision on a motion to amend absent an abuse of discretion. *Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 44. An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 33} "Compensatory damages are defined as those which measure the actual loss * * * [and] may, among other allowable elements, encompass direct pecuniary loss, * * * loss due to the permanency of the injuries, * * * and *physical and mental pain and suffering.*" (Emphasis added.) *Fantozzi v. Sandusky Cement Products Co.*, 64 Ohio St.3d 601, 612 (1992), *superseded by statute on other grounds as stated by Evans v. Thobe*, 2d Dist. Montgomery No. 24283, 2011-Ohio-3501, ¶ 36. These among other elements of damages are a matter for the trier of fact to assess because there is no standard by which such pain and suffering may be measured. *Id.* With respect to pleading requirements, it is important to note compensatory damages are classified as either "general" or "special." *Robb v. Lincoln Publ.*, 114 Ohio App.3d 595, 622 (12th Dist.1996). General damages, such as pain and suffering, "are those which flow as a conclusion of law from the injury suffered" and "are presumed by the injury and need not be pleaded or proved." *Id.* Special damages must be specially pleaded as they are not presumed by the injury, but rather, "are those occasioned by the special character, condition, or circumstance of the person wronged." *Id.*

{¶ 34} The trial court's decision to deny Dr. Ginn's motion for leave to amend his

complaint did not constitute an abuse of discretion because Dr. Ginn included a demand for compensatory damages in his complaint. The basis for his proposed amendment is to specifically include a demand for emotional distress damages flowing from the injury suffered in his tortious interference claim. However, Dr. Ginn met the general damages pleading requirement to seek emotional distress damages, and thus, his proposed amendment would be futile, as the trier of fact may already consider his emotional distress in assessing any possible damages.

{¶ 35} Accordingly, Dr. Ginn's second assignment of error is overruled.

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE TRIAL COURT ERRED IN FAILING ON REMAND TO COMPEL DISCOVERY FROM STONECREEK DENTAL.

{¶ 38} Dr. Ginn appears to argue the trial court abused its discretion by failing to enforce its oral ruling in favor of Dr. Ginn on his original motion to compel discovery, and then, later, granting summary judgment in favor of Stonecreek Dental before such discovery was complete.

{¶ 39} In his motion to compel discovery, Dr. Ginn sought financial information from Stonecreek Dental as a parent entity, as opposed to financial information solely from the Chillicothe location. Dr. Ginn asserts he sought this information to support an anticipated request for punitive damages. Stonecreek Dental objected to the discovery, the parties briefed the matter, and the parties appear to agree the trial court made an oral ruling granting Dr. Ginn's motion. However, after a thorough review of the record, it does not appear the trial court journalized its ruling in an entry before granting summary judgment in favor of Stonecreek Dental. *Accord King v. King*, 12th Dist. Madison No. CA2015-03-009, 2016-Ohio-2681, ¶ 56 (stating it is well-settled a court speaks only through its journal entries). Further, "an entry is effective only when it has been journalized, that is, when it has been

reduced to writing, signed by a judge, and filed with the clerk so that it may become a part of the permanent record of the court." *Huntington Natl. Bank v. Donatini*, 12th Dist. Warren No. CA2014-08-105, 2015-Ohio-67, ¶ 10.

**{¶ 40}** Thus, Dr. Ginn's third assignment of error is not properly before us in this appeal, and therefore, we have no jurisdiction to rule on this assignment of error.

**{¶ 41}** Accordingly, the judgment of the trial court granting summary judgment in favor of Stonecreek Dental is reversed, and the matter is remanded for further proceedings according to law and consistent with this Opinion.

RINGLAND and PIPER, JJ., concur.