DAVISON FUEL & DOCK COMPANY, APPELLEE, *v.* PICKANDS
MATHER & COMPANY ET AL., APPELLANTS.

(No. C-76184—Decided September 14, 1977.)

Messrs. *Paxton & Seasongood,* and *Mr. Jacob K. Stein,*
for appellee.

Messrs. *Dinsmore, Shohl, Coates & Deupree, Mr. John
W. Beatty, Mr. David W. Jones, Messrs. Arter & Hadden,
Mr. John E. Martindale* and *Mr. Thomas V. Koykka,* for
appellant Pickands Mather & Co.

*Messrs. Thomas A. Luebbers, Mr. Timothy L. Bouscaren, Messrs. Taft, Stettinius & Hollister, Mr. Robert G. Stachler* and *Mr. W. Stuart Dornette,* for appellee The University of Cincinnati and Directors individually.

*Messrs. Frost & Jacobs* and *Mr. James G. Headley* for appellee Sentry Insurance Company.

PALMER, J. In July 1973, plaintiff Davison Fuel & Dock Co. (Davison) entered into a contract with the University of Cincinnati, one defendant-appellee herein, to supply 50,000 tons of coal to the University for an agreed price of $16.15 per ton. The contract specified that the coal to be supplied by Davison was, *inter alia,* to contain no more than nine per cent ash and one per cent sulphur, with a heat content of 13,000 B. t. u.'s per ton. Davison, in turn, contracted with its supplier, defendant-appellant Pickands Mather & Co. (Pickands) for the delivery of 50,000 tons of coal to Davison's storage facility in North Bend, Ohio, for a price of $9.60 per ton. The specifications for ash, sulphur and heat content of the coal to be supplied by Pickands were substantially identical[1] with those recited in Davison's contract with the University, and Pickands' agents in fact knew that the coal purchased by Davison was to be used to fulfill the latter's contractual obligations to the University.

Deliveries under the respective contracts, which were to continue until June 1974, were timely commenced in July 1973, and continued throughout the summer and autumn months of 1973. During this period, the University addressed frequent complaints to Davison that the coal delivered by Davison from that supplied to it by Pickands consistently had failed to comply with contractual specifications. Nevertheless, Pickands continued its

---

[1] In an attempt to ensure that the coal purchased from Pickands would meet the specifications set forth in Davison's supply contract with the University, Davison's purchase contract with Pickands provided that the coal to be supplied thereunder was to meet the more exacting standards of less than eight percent ash and one percent sulphur, with a heat content of 13,100 British Thermal Units per ton.

shipment of generally substandard coal which, when delivered by Davison to the University, was accepted and burned "under protest" by the latter until December 1973.

This period also was marked by the advent of the Arab oil embargo, which occasioned a rapid escalation in the demand and price paid for coal on the open market. Accordingly, in October 1973, Pickands warned Davison that future shipments of coal would be discontinued unless Davison agreed to pay Pickands a price higher than that originally provided in the contract between the two parties. When the University refused a request to consent to a voluntary price increase under its contract with Davison, Davison informed Pickands of its intent to hold the latter to the original contract price.

Thereafter, in December 1973, Pickands gave notice to Davison terminating the coal supply contract between the two parties, having theretofore delivered only 12,000 of the 50,000 tons of coal originally contracted for. Davison, unable to find any alternate supplier for its needs, subsequently notified the University that it would be unable to complete its coal supply contract with the latter. Left to its own resources, the University was unable to locate sufficient quantities of coal meeting the original contract specifications in the open market, and, as a result, was forced to purchase and burn coal of somewhat inferior quality throughout the winter months of 1973 and 1974.

Davison thereafter brought the instant action for damages against Pickands based upon the latter's breach of its coal supply contract with Davison, and also joined the University, through its board of directors, as a party defendant in the action, alleging the University's wrongful refusal to pay for certain coal delivered by Davison prior to the forced termination of its coal supply contract with the University. Pickands, in its answer, generally denied Davison's claims, and asserted a counterclaim against Davison based upon the latter's alleged failure to pay for any of the coal delivered thereto by Pickands. The Uni-

versity, also denying Davison's claims, asserted a counterclaim against Davison for the latter's breach of its coal supply contract with the University.[2] In addition to the foregoing flurry of claims, the University presented a cross-claim against Pickands for the same specifications and amount of damages, including punitive damages, alleged in its counterclaim against Davison, asserting as its basis for the claim that Pickands "maliciously and intentionally and without justification procured the breach of the contract existing between defendant Board and plaintiff Davison of which Pickands had knowledge."

Therefter, all claims except the cross-claim of the University against Pickands were settled and resolved to the satisfaction of the respective parties during or at the conclusion of the jury trial below, by the entry of an agreed judgment under which the University received a net sum of $293,671.68, and are not the subject of any challenge in the instant appeal. On the unresolved cross-claim of the University against Pickands, however, a judgment was entered on the verdict of the jury awarding $20,000 in compensatory damages and $500,000 in punitive damages in favor of the University and against Pickands. Pickands timely filed this appeal, asserting in its single assignment of error that the trial court erred in overruling its motion for judgment notwithstanding the verdict on the cross-claim.

Pickands advances a number of arguments in support of its assignment of error, one of which we view as dispositive, viz., that the University failed, as a matter of law, to demonstrate the existence of any injury for which Pickands was liable to respond in compensatory damages. Since the rule is well-settled that punitive dam-

---

[2]Defendant-appellee Sentry Insurance Company, which had delivered a "Supply Contract Bond" to the University as surety for Davison's performance of its supply contract, was joined as a party defendant in the instant action by the University. The University's claims against Sentry were resolved in conjunction with the settlement of its claims against Davison, and are not the subject, in whole or in part, of this appeal.

ages may be awarded only in those cases in which compensatory damages have been proved and properly assessed against the party from whom recovery is sought, *Richard* v. *Hunter* (1949), 151 Ohio St. 185, *Trainor* v. *Deters* (1969), 22 Ohio App. 2d 135, *McClanahan* v. *Koviak* (1939), 62 Ohio App. 307 and, generally, Annotation, 17 A. L. R. 2d 527, Sections 1 and 2,[3] the threshold determination must obviously be made whether the University, in its action on the cross-claim, presented competent proof of compensatory damages properly attributable to the misconduct of Pickands, sufficient to sustain the judgment of $20,000 therefor. We conclude that it did not.

In an action based upon a tortious interference with contractual relations, a plaintiff may, upon competent proof, recover any and all damages proximately caused by the tortfeasor's misconduct. *Reichman* v. *Drake* (1951), 89 Ohio App. 222. See, generally, Annotation, 26 A. L. R. 2d 1227, Section 43. Such damages necessarily include, but are not limited to, those items of damage otherwise recoverable in an action for breach of contract brought against the defaulting party to the contract. *McNutt Oil & Refining Co.* v. *D'Ascoli* (1955), 79 Ariz. 28, 281 P. 2d 966; *Anthony* v *George T. Bye, Inc.* (1935), 243 App. Div. 390, 277 N. Y. S. 222. See generally Annotation, 26 A. L. R. 2d 1227, Section 43. Thus, an action in tort based upon malicious interference with a plaintiff's contractual rights, where appropriate, poses a viable alternative to an action on

---

[3] The University, in its brief, attempts to equate the assessment of nominal damages with an award of compensatory damages, claiming that "even if the University had presented nothing in the way of proof of its damages, it would have been entitled to recover nominal damages," and that "upon the basis of such nominal damages the award of punitive damages could be predicated." Such a claim, however, was conclusively rejected by the Supreme Court of Ohio in the case of *Richard* v. *Hunter* (1949), 151 Ohio St. 185, wherein the Court noted that the reasoning urged herein by the University would permit the recovery of punitive damages " 'in every case of violation of mere legal rights,' " and would " 'go far toward destroying the practical effect of the general rule making actual damages a necessary predicate for exemplary damages.' " *Id.*, at 188-189.

the contract itself, and the mere existence of a plaintiff's inchoate cause of action against one party for breach of contract does not foreclose an action in tort against another party for all damages suffered by reason of the latter's inducement of such a breach See, *e. g., Phillips & Benjamin Co.* v. *Ratner* (C. A. 2, 1953), 206 F. 2d 372; *Inland Finance Corp.* v. *Champion Cigarette Vending Co.* (C. A. 4, 1958), 260 F. 2d 243. See, generally, Annotation 26 A. L. R. 2d 1227, Section 19.

However, the fact that a plaintiff has separate and independent causes of action in contract and in tort does not permit him to recover more than the amount of damage actually suffered as a consequence of the injury resulting from the wrongful breach of his contract. *Simon* v. *Royal Business Funds Corp.* (1970), 34 A. D. 2d 758, 310 N. Y. S. 2d 409; *Simon* v. *Noma Electric Corp.* (1944), 293 N. Y. 171, 56 N. E. 2d 537. Proof of actual injury or damage is essential to recovery in either action; thus, where a plaintiff earlier has recovered full damages for breach of contract against the defaulting party to the contract, and fails to allege and prove the existence of *additional* damages attributable solely to the wrongful acts of interference by the alleged tortfeasor, he is precluded from any further recovery against a defendant in a subsequent tort action. *Simon* v. *Royal Business Funds Corp., supra; Simon* v. *Noma Electric Corp., supra; Swift* v. *Beaty* (1954), 39 Tenn. App. 292, 282 S. W. 2d 655. See generally 1 Harper & James, Torts 490, Section 6.5 (1956).

Applied to the instant cause, the judgment entry reflects that the University, pursuant to a settlement agreement with Davison, obtained a judgment in satisfaction of all damages claimed for breach of contract against the latter. A careful examination of the University's final amended counterclaim and cross-claim discloses that the University sought from Pickands the same items and amount of damages sought from Davison. Thus, in the absence of any pleading or of proof of additional damges resulting from the alleged tortious conduct of Pickands, the judgment entered against Davison for breach of con-

tract must be deemed to have comprehended the injury suffered from Pickands and to have compensated the University for any and all damages suffered as a result of such injury, and any additional recovery against Pickands on the University's tort claim should have been disallowed.

The University, in its brief, attempts to avoid the thrust of this reasoning by arguing that certain items of damage alleged in its pleading—specifically, those damages associated with reduced boiler efficiency and caused by the burning of coal having a lower heat content than that originally contracted for—were not foreseeable by Davison, and therefore were not chargeable to nor recoverable in the judgment against Davison as consequential damages under R. C. 1302.89. We disagree, noting that R. C. 1302.89(B)(1) defines consequential damages recoverable for a seller's breach of contract to include:

"*[A]ny loss* resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know, and which could not reasonably be prevented by cover or otherwise; * * *." (Emphasis added.)

That Davison had reason to know of the University's requirements as to heat content at the time of contracting is, we believe, apparent on the face of the agreement between the two parties, which recited in detail specifications for ash, sulphur and heat content of the coal to be supplied under the contract, and which stated that such specifications were designed to avoid "the risk of substantially lowering the quality of fuel which [the University's] boilers were designed to handle." In addition, it is nowhere seriously disputed, and the record conclusively establishes, that the University's unsuccessful attempts to recover its losses were undertaken in good faith and without unreasonable delay, and that the consequential damages complained of could not otherwise have been prevented. Thus, Davison, as the breaching seller, was liable for all damages, including all conseuential damages, alleged by the University in its counterclaim and cross-claim in the proceedings below, and the judgment awarded

to the University as a result of the settlement of its claims against Davison fully satisfied and precluded any further recovery on all claims for damage asserted therein by the University.

Moreover, even if no judgment had been awarded to the University in its action on the contract against Davison, the inadequacy of the proof adduced by the University in support of its various claims of damage in the proceedings below would compel our reversal of the instant case. The evidence offered in support of the University's substantial claim for cover damages, consisting of two diagrams purporting to show the various amounts paid for coal by the University in excess of the original contract price, was ruled incompetent to prove the claim asserted by the court below, and was accordingly stricken from the record during the course of trial. Despite the trial court's admonition to the University's counsel at this juncture that "* * * you have a problem at this point as far as your damages," the University made no further attempt to prove the claim by the introduction of additional competent evidence prior to the close of its case in chief.

Proof of all other damage claims asserted by the University, when attempted at all, consisted of testimony which cursorily outlined various problems, such as the removal of excessive ash and the reduced efficiency of boiler operations, encountered by the University during the winter months of 1973 and 1974. No attempt was made to prove the amount of damages attributable to any or all such claims by the University, although such amounts had been set forth in exacting detail in the University's counterclaim and cross-claim, and were, in our opinion, susceptible to such proof by the University.

In sum, we conclude that the University failed to sustain its burden of establishing, by competent proof, the existence and value of any injury attributable to the tortious conduct of Pickands over and above that subsumed within the judgment granted to Davison, with that degree of certainty permitted by the nature and circumstances of

the tort claim asserted herein.[4] *Lovelady* v. *Rheinlander* (1940), 66 Ohio App. 409. See also *Hudock* v. *Youngstown Municipal Ry. Co.* (1956), 164 Ohio St. 493; *Levy* v. *Coon* (1964), 11 Ohio App. 2d 200; *Reeg* v. *Hodgson* (1964), 1 Ohio App. 2d 272.

It necessarily follows, then, that the University failed, as a matter of law, to demonstrate its entitlement to the recovery of any damages, compensatory or punitive, against Pickands in the proceedings below, and that the trial court therefore erred in refusing to enter the requested judgment notwithstanding the verdict in favor of Pickands. The assignment of error is accordingly sustained, and that part of the trial court's judgment herein appealed from must be, and hereby is, reversed.

*Judgment reversed.*

SHANNON, P. J., and KEEFE, J., concur.

---

[4]Such a failure of proof apparently was obvious to counsel for the University in the proceedings below, who, during the course of argument on his unsuccessful motion to reopen the University's case against Pickands, admitted that "* * * we have not proved compensatory damages, and if we can't prove compensatory damages, we have no right to argue a cause of action [against Pickands] for punitive damages."