Janet E. VIROSTEK, Plaintiff–
Appellant/Cross–Appellee,

v.

LIBERTY TOWNSHIP POLICE DE-
PARTMENT/TRUSTEES; Gerald T.
Wardrop; Defendants–Appel-
lees/Cross–Appellant.

Nos. 99–3809, 99–3893.

United States Court of Appeals,
Sixth Circuit.

July 11, 2001.

Before DAUGHTREY and MOORE, Circuit Judges, and CLELAND,* District Judge.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant, Janet E. Virostek, filed this action against Defendant–Appellee, the Liberty Township Police Department/Trustees ("Liberty Township"), and Defendant–Appellee/Cross–Appellant, Gerald T. Wardrop, former Chief of Police, in both his individual and official capacities (collectively referred to as "Defendants"), alleging sex, disability, and age discrimination claims under federal and state law; retaliation claims under federal and state law; breach of contract; and violations of 42 U.S.C. § 1983. The district court granted Wardrop's motion to dismiss all federal claims against him in his individual capacity but denied such motion regarding the state claims asserted against Wardrop. The district court also granted summary judgment for Defendants on Virostek's federal and state disability discrimination claims, state age discrimination claim, breach of contract claim, § 1983 claims, and sex discrimination claims for failure to promote; disparate treatment in receiving approval to attend training seminars; disparate treatment in the provision of equipment, such as police cars and typewriters; disparate treatment in receiving preferred shifts; and disparate treatment in receiving praise for work, but denied summary judgment on the federal and state sex discrimination, federal age discrimination, and retaliation claims regarding Virostek's reassignment from a juvenile detective position to a patrol officer position.[1]

At trial, the district court granted judgment as a matter of law on Virostek's

---

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Throughout these proceedings, Virostek has argued that there is a pattern and practice of sex discrimination in the Liberty Township Police Department. We recognize that Virostek faces significant obstacles in proving a pattern and practice claim because she was the only female officer in the police department until December 1995 when the department hired Alexandra Anastis. Joint Appendix ("J.A.") at 464. Virostek's arguments, however, display a fundamental misunderstanding of the law governing pattern and practice claims. By their very nature, pattern and practice suits involve claims of class-wide discrimination. *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1252 (7th Cir.1990). As the Supreme Court has explained, the crucial difference between an individual's claim of discrimination and an action "alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'" *Cooper v. Federal Reserve Bank,* 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (quoting *International Bhd. of Teamsters v.*

retaliation claims. Following deliberations, the jury issued a verdict in favor of Defendants on Virostek's federal age discrimination claim but decided in favor of Virostek on her sex discrimination claims. The jury awarded Virostek damages, however, in the amount of only $1.00.

Virostek now appeals on eight grounds: (1) the district court erred in granting partial summary judgment on her sex discrimination claims; (2) the district court erred in granting judgment as a matter of law on her retaliation claim at trial; (3) the district court abused its discretion by not giving a jury instruction on backpay and erred in denying her request for backpay; (4) the district court abused its discretion in admitting evidence regarding her receipt of workers' compensation benefits at trial; (5) the district court erred in not awarding attorneys' fees and costs; (6) the district court abused its discretion by not giving instructions on the eggshell plaintiff and on punitive damages; (7) the district court abused its discretion by giving an instruction on nominal damages; and (8) the district court abused its discretion in excluding evidence of alleged sex discrimination at trial. Wardrop also cross-appeals, arguing that the district court erred in denying his motion for judgment as a matter of law. For the reasons that follow, we AFFIRM the final judgment of the district court.

## I. BACKGROUND

Virostek is a female police officer who is employed by Liberty Township in Ohio. Virostek began working for Liberty Township in 1976 as a part-time police officer and first began full-time employment as a patrol officer on July 9, 1979.

In 1990, Virostek was promoted to sergeant after having received the third highest score on the required civil service exam. Virostek was promoted after James Cerenelli and Michael Pilolli, both of whom received higher scores on the civil service exam. According to Wardrop, the State of Ohio required that the jobs be awarded to the people receiving the top scores on the exam.

In 1992, Wardrop became the Chief of Police in Liberty Township. During Wardrop's tenure as Chief, Cerenelli and Pilolli were also promoted to Captain before Virostek. According to Liberty Township, these officers were promoted prior to Virostek because they each scored higher than Virostek did on the civil service exam and because Pilolli had served as an Acting Captain for two years prior to his promotion.[2]

*United States*, 431 U.S. 324, 360 n. 46, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). In her briefs, however, Virostek does not identify a "pattern" of discriminatory decisionmaking. Instead, she describes a litany of individual decisions that she considers to have been discriminatory, thereby asserting only individual disparate treatment claims.

Furthermore, in her appellate brief, Virostek fails to specify which sex discrimination claims she is appealing. In fact, she provides arguments for the reversal of her failure to promote claim only. Similarly, Virostek did not *clearly* specify what her actual individual disparate treatment claims are in her response to Defendants' motions for summary judgment and, for some of the claims, failed to detail when they occurred. Based upon our review of the record, it appears that Virostek was asserting and is now appealing sex discrimination claims based upon a failure to promote; disparate treatment in receiving approval to attend training seminars; disparate treatment in the provision of equipment, such as police cars and typewriters; disparate treatment in receiving preferred shifts; and disparate treatment in receiving praise for work.

**2.** Virostek's allegations regarding Cerenelli and Pilolli's promotions to Sergeant and then to Captain hint at a pattern and practice claim. On appeal, however, Virostek does not challenge the department's decisionmaking process. Specifically, she does not provide evidence to refute Wardrop's statement

On July 13, 1992, Virostek filed her first charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission. On February 11, 1993, Virostek withdrew her charge before the OCRC, and she, her attorney Mary Jane Stephens, Wardrop, and Charles Dunlap, Liberty Township's attorney, signed a consent decree, which contained no admissions of sex discrimination by Liberty Township under Ohio law but provided that the police department would "refrain from and not engage in any practice or act which has the purpose or effect of unlawfully discriminating against women." Joint Appendix ("J.A.") at 1138.

On September 28, 1992, Virostek was reassigned to the position of juvenile officer in the Detective Division. Although Wardrop was initially pleased with Virostek's performance as a juvenile detective,[3] in January of 1995 Wardrop held a meeting with Virostek to discuss his concerns with her performance as a juvenile detective. According to Wardrop, in 1994 he began to notice that Virostek "began to demonstrate a great deal of hostility" toward the juvenile detective position. J.A. at 891. Wardrop further stated that he had received negative feedback concerning Virostek's performance from different sources at the schools. For example, Bruce Jones, the superintendent of Liberty Township schools, testified that he told Wardrop that he was not pleased with Virostek's performance as a juvenile detective because of her lack of visibility in the schools. Additionally, Lawrence Prince, who was the high school principal during Virostek's tenure as a juvenile detective, testified to reporting his concerns that Vi-

rostek was too inflexible with the students and was not present at the school enough. Lastly, Patricia Metzinger, a trustee of the Township, testified to calling Wardrop to inform him that Virostek had told her and two other women in her office that she did not like "the F-ing bastards [the students]" and that Virostek was insensitive to the students. J.A. at 597.

Virostek described the meeting in January of 1995 differently than Wardrop; in particular, she described the meeting as more hostile than constructive. In this meeting, Virostek states, Wardrop "pounded his fist on the table. He said he didn't want [her] to be the juvenile detective any longer, that he wanted [her] voluntary resignation along with a letter requesting that [she] . . . voluntarily go back to the patrol division. . . ." J.A. at 761–62.

On January 17, 1995, Wardrop sent Virostek a memorandum advising her that Metzinger had requested information and documentation concerning the youth court program. On January 18, 1995, Virostek responded to the memorandum by providing the requested documentation. Three months later, on April 20, 1995, Wardrop reassigned Virostek from the juvenile detective position into a patrol officer position, and according to Virostek, she was discriminatorily placed in the least desirable split shift for a patrol officer. Wardrop testified that he reassigned Virostek because she failed to improve her performance as a juvenile detective. Sergeant John Saraya was then reassigned from the patrol officer position to the juvenile detective position to replace Virostek. Soon after entering the juvenile detective posi-

---

that the State of Ohio required jobs to be awarded to the people receiving the top scores on the civil service exam, nor does she allege that the exam itself was discriminatory.

3. Virostek cites a newspaper article of November 1, 1992, which quoted Wardrop as stating, "Since Jan's been assigned to juvenile, she's added a new dimension – the woman's touch." J.A. at 172.

tion, Saraya terminated the youth court program.

Virostek claims that her reassignment to a patrol officer position caused her significant emotional distress and later required her taking a medical leave because she was unable to perform the more physical duties of a patrol officer with her bad shoulder. At trial, Catherine Kieley, who was president of the law enforcement training center where Virostek taught several courses, testified that she noticed that Virostek had become very distressed after she was reassigned from juvenile detective to patrol officer and that Virostek's depression became so severe that Virostek canceled some of the classes she taught at the center. Kieley also noted that Virostek's mother had died shortly before the reassignment. Additionally, one of Virostek's doctors, Dr. Nash, testified to Virostek's changed mental state after the reassignment. As a result, Dr. Nash recommended "therapy for [Virostek's] chronic stress reaction with Paxil [an anti-depressant], 20 milligrams daily ." J.A. at 628; *see also* J.A. at 640–59 (testimony of Dr. Eugene O'Brien).

The day after Wardrop announced the reassignment, Virostek requested an assignment to another shift, and on April 26, 1995, Virostek filed her second charge of sex and age discrimination and retaliation. On April 27, 1995, Wardrop denied Virostek's request for assignment, and on that same day, Virostek filed a grievance with the union concerning her reassignment from the juvenile detective position to a patrol officer position.

On April 28, 1995, Virostek went on medical leave. Virostek stated in her deposition that she went on medical leave because her problems with her shoulder rendered her unable to make custodial arrests and to engage in physical confrontations. She also stated, however, that she occasionally would have to make custodial arrests and engage in physical confrontations as a juvenile detective. At trial, one of Virostek's doctors, Dr. Thomas Anderson, asserted that he agreed that Virostek could not perform her duties as a patrol officer. Dr. Anderson further testified that he and Virostek began to discuss surgery as an option because "the use of injections, the use of physical therapy, the use of anti[-]inflammatory medications had not provided [Virostek] with adequate relief." J.A. at 487. He also asserted that the inability to control Virostek's condition through injections would be more problematic with her being assigned to patrol duties and that he did not know if remaining in the detective position would have provided her with the necessary relief to perform her detective duties. When asked if Virostek needed the shoulder surgery "prior to her being put into patrol duties," Dr. Anderson answered "Yes." J.A. at 1168.

On July 1, 1996, Virostek was returned to the juvenile detective position as a result of the arbitration of her grievance. Virostek states that she experienced various instances of retaliation when she returned as a juvenile detective. For example, Virostek testified that she was retaliated against when Defendants subjected her to an internal affairs investigation after she became angry with a less senior officer, Sergeant Shimko, who told her that he could call her anytime that he felt a juvenile crime required her attention. Captain James Cerenelli testified that he told Shimko that he could contact Virostek to give her "information [regarding juvenile drug activity] and then allow her to decide how that was to be disseminated." J.A. at 503. Cerenelli explained that he told Shimko to contact Virostek because he did not want to place investigations, especially investigations involving undercover informants, in jeopardy by having a

patrol officer "make a bust" on a tip without contacting Virostek. J.A. at 503. According to Cerenelli, when he found out that Virostek said she did not want to be contacted after she was off duty, he began an administrative inquiry that confirmed Shimko's story and recommended discipline for Virostek. After the investigation, Wardrop recommended to the Trustees that Virostek be disciplined with a one-day work and wage suspension. Virostek, however, never served a one-day suspension without pay. J.A. at 856.

## II. ANALYSIS

### A. Partial Summary Judgment On Sex Discrimination

Virostek argues that the district court erred in granting partial summary judgment on her sex discrimination claims. Specifically, Virostek challenges the district court's decision to grant summary judgment on her sex discrimination claims for failure to promote; disparate treatment in receiving approval to attend training seminars; disparate treatment in the provision of equipment, such as police cars and typewriters; disparate treatment in receiving preferred shifts; and disparate treatment in receiving praise for work.

In its November 19, 1998, Memorandum Opinion and Order, the district court granted summary judgment on several of Virostek's sex discrimination claims. The district court first granted summary judgment on Virostek's failure to promote claim, holding that Virostek had failed to show "the discriminatory animus necessary to establish a prima facie case of discrimination." J.A. at 427. The district court then addressed Virostek's remaining claims, holding (1) that Virostek had failed to establish a prima facie case for her unequal training claim because she failed to show that her male comparators were treated more favorably than she was; (2)

that Virostek had failed to show that the Defendants' reason for her not receiving a new vehicle, that the "new vehicles were designated as patrol cars due to the amount of time spent on the road by patrol officers in comparison with detectives," was a pretext for discrimination, see J.A. at 428; and (3) without any explanation, that the remainder of Virostek's claims "do not suffice to create a prima facie case of sex ... discrimination." see J.A. at 428.

We review de novo a district court's grant of summary judgment. See *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir.2000). Summary judgment is proper only when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). Viewing all facts and inferences drawn therefrom in the light most favorable to the nonmovant, we then determine whether the evidence presented is such that a reasonable jury could find for that party. See *Nguyen*, 229 F.3d at 562 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

To establish a prima facie claim of sex discrimination due to unequal treatment, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) similarly situated male employees were treated more favorably. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Nguyen*, 229 F.3d at 562–63; *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir.1999). An adverse employment action is a materially adverse change in the terms or conditions of the plaintiff's employment caused by the employer's actions. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir.2000). The Sixth Circuit has noted that:

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (alteration in original) (citation omitted). De minimis employment actions are not materially adverse and therefore not actionable. *Id.* at 462.

▮ After a plaintiff creates a presumption of discrimination by establishing a prima facie case, the defendant must rebut that presumption by proffering a legitimate, non-discriminatory reason for its decision. The plaintiff then bears the burden of showing that the defendant's proffered reason is pretextual. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082–84 (6th Cir.1994). The plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Id.* at 1084. If a plaintiff can show that the defendant's proffered, non-discriminatory reason is pretextual, then the trier of fact may infer discrimination. *Id.* Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

We conclude that the district court did not err in granting summary judgment on Virostek's sex discrimination claims for failure to promote; disparate treatment in receiving approval to attend training seminars; disparate treatment in the provision of equipment, such as police cars and type-writers; disparate treatment in receiving preferred shifts; and disparate treatment in receiving praise for work. For each of these claims, Virostek has failed to create a genuine issue of material fact regarding whether she can succeed under the *McDonnell Douglas* burden-shifting framework.

▮ To begin, Virostek has failed to create a genuine issue of material fact regarding whether Defendants' asserted reasons for promoting Cerenelli and Pilolli before her, that the department was required to promote them before Virostek because they received higher scores on the civil service exam and because Pilolli had served as an Acting Captain for two years and could claim a permanent appointment to that position under state law, were a pretext for discrimination. Additionally, contrary to Virostek's belief, the district court properly decided that under state law the residency requirements for the Township did not apply to Cerenelli and Pilolli and that Cerenelli and Pilolli could move outside of the Township because they were full-time police officers in the department before the residency requirement became effective. *Fraternal Order of Police Youngstown Lodge No. 28 v. Hunter*, 49 Ohio App.2d 185, 360 N.E.2d 708, 717–18 (Ohio Ct.App.1975).

▮ On her claim regarding unequal training opportunities, Virostek has failed to create a genuine issue of material fact regarding whether she can establish a prima facie case of sex discrimination. Specifically, Virostek has failed to produce evidence showing that similarly situated males received approval to attend training seminars that were denied to her. Although Virostek provided summary lists of some of the training seminars that were attended by her, Cerenelli, and Pilolli and two different department training schedules, she failed to specify the seminars for

which she requested and was denied attendance. *See Jackson v. City of Columbus,* 194 F.3d 737, 752 (6th Cir.1999). Additionally, Virostek has failed to create a genuine issue of material fact regarding whether Defendants' asserted reasons for Cerenelli's and Pilolli's attendance at more training seminars, that Cerenelli and Pilolli had requested permission to attend more training seminars than Virostek and that Virostek had taken a medical leave for one year and three months, were a pretext for discrimination.

On her claims regarding discriminatory treatment in the assignment of equipment, Virostek has failed to create a jury question regarding whether she can establish a prima facie case of sex discrimination. First, Virostek has failed to raise a genuine issue of material fact regarding whether the assignment of an older police vehicle was an adverse employment action affecting the terms and conditions of her employment and has failed to show that similarly situated males, in particular male officers with similar seniority, received newer vehicles than she did. She has also failed to create a genuine issue of material fact regarding whether Defendants' asserted reason for assigning newer vehicles to less senior patrol officers, that such officers spent more time on the road than detectives, was a pretext for discrimination. Second, Virostek has failed to create a jury question regarding whether Wardrop's failure to provide a typewriter for her was an adverse employment action affecting the terms and conditions of her employment and failed to produce evidence that similarly situated males had been assigned a typewriter upon similar request.

On her claims regarding discriminatory treatment in receiving preferred shifts and praise for her work, Virostek has failed to create a jury question regarding whether she can establish a prima facie case of sex discrimination. Specifically,

Virostek has failed to create a jury question regarding whether such actions are adverse employment actions affecting the terms and conditions of her employment. *Cf. Primes v. Reno,* 190 F.3d 765, 767 (6th Cir.1999) (holding that "mid-range, performance evaluation of 'fully successful' – is not the type of adverse employment action contemplated by Title VII"); *Jacklyn,* 176 F.3d at 930 (holding that the rejection of "computer expenses that previously had been approved were [not] materially adverse employment actions").

## B. Judgment As A Matter Of Law On Retaliation Claim

Virostek also argues that the district court erred in granting judgment as a matter of law on her retaliation claim. Specifically, Virostek claims that Defendants retaliated against her after she became angry with a less senior officer, Sergeant Shimko, who told her that he could call her anytime he felt that a juvenile crime required her attention, and after she filed a union grievance to complain about the incident.

We review de novo a judgment as a matter of law. *See Manzer,* 29 F.3d at 1081. In so doing, "we 'must view the evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences.'" *Id.* (quoting *Danielson v. City of Lorain,* 938 F.2d 681, 683 (6th Cir.1991)).

To establish a prima facie case of retaliation, a plaintiff must establish that: (1) she engaged in a protected activity; (2) her involvement in the protected activity was known to the defendant; (3) thereafter, the defendant took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen,* 229 F.3d at 563. To establish the causal connection required in the fourth prong, a plaintiff must produce suf-

ficient evidence from which an inference can reasonably be drawn that the adverse action would not have been taken but for the plaintiff's protected activity. *Id.*

 We conclude that the district court did not err in granting judgment as a matter of law on Virostek's retaliation claim because Virostek did not suffer an adverse employment action. Although the record indicates that the investigation of the encounter between Shimko and Virostek resulted in the recommendation of a one-day suspension without pay for Virostek, this one-day suspension without pay never was served, and Virostek testified that she had not "suffered any loss as a result." J.A. at 856. We do not believe that an investigation alone is sufficient to establish an adverse employment action. *See Jackson,* 194 F.3d at 752 (holding that a police chief's *suspension with pay* was not an adverse employment action).

### C. Backpay

Virostek argues that the district court abused its discretion by refusing to give a jury instruction on backpay. Virostek further argues that, even if such refusal did not constitute an abuse of discretion, the district court erred by not awarding her backpay because the evidence established that she lost backpay as a result of Defendants' actions.

#### 1. Jury Instruction

 We review "'a district court's refusal to give requested jury instructions under an abuse of discretion standard.'" *Hisrich v. Volvo Cars of N. Am., Inc.,* 226 F.3d 445, 449 (6th Cir.2000) (citation omitted). An abuse of discretion has occurred when we have "'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (citation omitted). In considering a challenge to a district court's decision regarding the inclusion or exclusion of requested jury in-structions, we review "'jury instructions as a whole in order to determine whether the instructions adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision.'" *Id.* (citation omitted). "A district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Id.* (internal quotations omitted). We will reverse a judgment only "'if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Id.* (citation omitted).

 We conclude that the district court did not abuse its discretion by deciding not to give a backpay instruction to the jury. As the record shows, the parties previously agreed to let the district court determine the backpay award in this case. Therefore, the failure to give such an instruction did not impair Virostek's theory of the case.

#### 2. Denial Of Award For Backpay

 We review a district court's decision to award or not to award backpay and the district court's calculation of backpay for abuse of discretion. *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 840 (6th Cir.1994). "A backpay award should make the claimant whole, that is, to place [her] in the position [s]he would have been in but for discrimination." *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 626 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).

 At trial, Virostek testified that she lost wages from her job because she had to go on medical leave in 1995 due to Wardrop's decision to reassign her to a patrol officer position, lost interest from the mon-

ey she had to pull out of the bank during her leave, and lost money from various teaching positions she had to cancel as a result of her leave. In considering Virostek's motion for backpay, the district court noted that the success of such motion was dependent upon Virostek's ability to demonstrate "a causal connection between her transfer to the patrol division and her medical leave which was necessitated by her shoulder surgery." J.A. at 436. The district court then denied Virostek's motion for backpay, stating that "[i]n light of Dr. Anderson's testimony that [Virostek's] shoulder problems prohibited her from engaging in *any* physically demanding duties of the patrol or juvenile officer positions, [Virostek] has failed to establish the requisite causal connection between her transfer to the patrol division and her medical leave of absence." J.A. at 437.

We conclude that the district court did not abuse its discretion in denying Virostek's motion for backpay. The record supports the district court's conclusion that Virostek failed to establish a causal connection between her reassignment and her medical leave. Although Dr. Anderson agreed that Virostek could not perform her duties as a patrol officer, he also asserted that Virostek needed shoulder surgery even before she was reassigned to a patrol officer position, and that he did not know if Virostek's remaining in the detective position would have provided her with the necessary relief to perform her detective duties. Additionally, although Virostek stated in her deposition that she went on medical leave because her problems with her shoulder rendered her unable to make custodial arrests and to engage in physical confrontations, she also conceded that she would on occasion have to make custodial arrests and engage in physical confrontations as a juvenile detective. In other words, Virostek failed to produce

evidence to show that her medical leave was necessitated only due to her reassignment to patrol officer. Therefore, we hold that the district court did not abuse its discretion in denying Virostek's motion for backpay.

**D. Workers' Compensation Evidence**

■ Virostek argues that the district court improperly admitted evidence concerning her receipt of workers' compensation benefits at trial because such evidence was irrelevant and unfairly prejudicial. We disagree.

■ As a general matter, workers' compensation benefits cannot be used to reduce a plaintiff's award of backpay. *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480 (6th Cir.1990). In this case, however, Virostek opened the door for the admission of such evidence through her trial testimony. At trial, when asked if she was "getting a paycheck during this period of time [she was] off," Virostek answered, "No, I had no incoming money at that time." J.A. at 329. She explained:

> I had savings in the bank, and actually it wasn't real expensive to support myself for that time because I wasn't leaving the house. I had just my bills to pay, so probably around a thousand dollars, maybe a little bit more, a little bit less, but I just pulled the money out and I just kept on wondering how much longer I could pull the money out. Because in addition, Anderson had told me when I had the shoulder surgery I was looking at a lo[n]g rehab period, so I had some real serious concerns. Nothing was working. Everything was just going right down the gutter.

J.A. at 329.[4]

In light of this testimony, we believe that the district court had the authority to

4. In response to Virostek's statement that she "had no incoming money at that time," De-

admit evidence regarding Virostek's receipt of workers' compensation benefits as a means for impeaching her statement that she had "no incoming money at that time" under Federal Rule of Evidence 607.[5] Furthermore, we do not believe that the probative value of this evidence was substantially outweighed by its potential prejudicial effect. Finally, the workers' compensation benefits were irrelevant to the district court's determination not to award backpay and to this court's affirmance. *See supra* Part V(C)(2).

E. Jury Instructions

Virostek argues that the district court abused its discretion by refusing to give a jury instruction on the "eggshell plaintiff" and another on punitive damages. Virostek also argues that the district court abused its discretion by giving an instruction on nominal damages.

1. Eggshell Plaintiff

 Virostek argues that the district court abused its discretion by refusing to give a charge regarding the determination of damages for the "eggshell plaintiff." At trial, Virostek requested the following instruction on the "eggshell plaintiff":

Vulnerability is relevant in determining damages. The fact that the complaining party may be unusually emotionally sensitive and incur great emotional harm

from discriminatory conduct will not absolve the Defendant from responsibility for the greater emotional harm. A tortfeasor takes its victim as it finds [him or her]. In some cases, unusual sensitivity will enhance the damage award; in other cases, unusual hardiness will reduce it. The damage to be awarded must compensate the plaintiff and lead the defendant to take account of the full consequences of [its] act.

J.A. at 457.

We conclude that the district court did not abuse its discretion by refusing to give Virostek's requested "eggshell plaintiff" instruction because Virostek failed to establish at trial that she had a pre-existing mental condition caused by her mother's death. *See, e.g., Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 446–47 (7th Cir. 1996). None of Virostek's witnesses at trial testified to a serious pre-existing, emotional condition suffered by Virostek as a result of her mother's death. For example, Dr. Anderson did not testify to any emotional problems caused by the death of Virostek's mother, and although Dr. Nash testified that Virostek suffered emotional distress due to the death, he never discussed it separately from the distress caused by Virostek's reassignment to a patrol officer position.[6] In sum, because Virostek failed to establish that she was

---

fendants requested permission to ask Virostek about the workers' compensation benefits she received during her leave so that they could impeach her statement that she had "no incoming money at that time." J.A. at 816–820. Defendants then asked the following questions:

Q: On direct examination you testified that you had no source of income and that you were living off approximately $1,000 in savings; isn't that correct?
A: That's correct.
Q: Isn't it true that you received a total of $22,167.58 in temporary workers compensation benefits?

A: Yes, it is.
J.A. at 816, 822.

5. Federal Rule of Evidence 607 provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." FED.R.EVID. 607.

6. Additionally, while Kieley noted that the reassignment to a patrol officer position came at a bad time because of the death of Virostek's mother, she did not testify that Virostek was significantly depressed because of the death before her reassignment.

indeed "an eggshell plaintiff," we hold that the district court did not abuse its discretion in failing to give such instruction. *Id.*

### 2. Punitive Damages

■ Virostek also argues that the district court abused its discretion by refusing to give the jury an instruction on the availability of punitive damages for her sex discrimination claim against Wardrop under Ohio law. The question of whether there was sufficient evidence to support a punitive damages award is a question of law, which we review de novo, and any error in this legal decision by definition constitutes an abuse of discretion. *Cf. Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ Under Ohio law, an award of punitive damages is available upon a finding of actual malice. *Calmes v. Goodyear Tire & Rubber Co.,* 61 Ohio St.3d 470, 575 N.E.2d 416, 419 (Ohio 1991). Ohio law provides, however, that "punitive damages are not recoverable in the absence of proof of actual damages." *Richard v. Hunter,* 151 Ohio St. 185, 85 N.E.2d 109, 110 (Ohio 1949). The Ohio Supreme Court has indicated that mere nominal damages, meaning damages awarded solely due to the violation of a plaintiff's rights and not for compensatory purposes, are not actual damages upon which a punitive

damages award may be attached. *Id.; see also Davison Fuel & Dock Co. v. Pickands Mather & Co.,* 54 Ohio App.2d 177, 376 N.E.2d 965, 967 n. 3 (Ohio Ct.App. 1st Dist.1977) ("The University, in its brief, attempts to equate the assessment of nominal damages with an award of compensatory damages, claiming that 'even if the University had presented nothing in the way of proof of its damages, it would have been entitled to recover nominal damages,' and that 'upon the basis of such nominal damages the award of punitive damages could be predicated.' Such a claim, however, was conclusively rejected by the Supreme Court of Ohio in the case of *Richard v. Hunter* (1949) . . . ."); *cf. Uebelacker v. Cincom Sys. ., Inc.,* 80 Ohio App.3d 97, 608 N.E.2d 858, 863 (Ohio Ct. App. 1st Dist.1992) (noting that "[t]he trial court made it clear in answering the jury's question that nominal damages may not serve as a predicate for punitive damages"). The *Hunter* court explained that if mere nominal damages were an adequate prerequisite for punitive damages, such a result would "go far toward destroying the practical effect of the general rule, making actual damages a necessary predicate for exemplary damages." *Hunter,* 85 N.E.2d at 111 (quotation omitted).[7]

■ We conclude that, even if there were evidence of malice sufficient to sup-

---

7. Virostek argues that the Supreme Court of Ohio's decisions in *Quillet v. Johnson,* 71 N.E.2d 488 (Ohio 1947), and *Hunter* allow a jury to award punitive damages where only nominal damages have been awarded. Unlike Virostek, we do not read *Hunter,* which followed *Quillet* two years later, as holding that punitive damages are recoverable under Ohio law where only nominal damages have been awarded. Instead, we read *Hunter* as overruling *sub silentio* the *Quillet* court's holding that nominal damages are an adequate prerequisite for punitive damages. The tenor of *Hunter* suggests that the court adopted the view of the majority of jurisdictions, which is that punitive damages may not

attach to an award of mere nominal damages. Admittedly, published case law addressing this issue in Ohio is unclear and sparse. Apart from *Quillet* and *Hunter,* there are only three published appellate decisions directly addressing this issue in Ohio, two of which, however, indicate that punitive damages may not be attached to nominal damages award. *Davison,* 376 N.E.2d at 967 n. 3; *see also Uebelacker,* 608 N.E.2d at 863. *But see Jasterbowski v. Michos,* 44 Ohio App.2d 201, 337 N.E.2d 627, 631 (Ohio Ct.App. 8th Dist.1975) ("noting that [w]here there are nominal compensatory damages . . . punitive damages have been held a proper issue in Ohio").

port a punitive damages award, the district court's refusal to give a punitive damages instruction to the jury on Virostek's state sex discrimination claim against Wardrop was harmless error.[8] In this case, the jury awarded Virostek an award of $1 in nominal damages only. Therefore, no punitive damages were recoverable under Ohio law.

### 3. Jury Instruction On Nominal Damages

 Virostek argues that the district court abused its discretion by giving a jury instruction on nominal damages at trial. Because Virostek did not object to the inclusion of the nominal damages instruction at trial, she has waived such objection under Federal Rule of Civil Procedure 51. FED. R. CIV. P. 51; *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §§ 2553, 2558 (2d ed.1995). Reversal of the jury verdict based upon the nominal damages instruction may occur only if there was plain error in the instruction, which did not occur in this case. *Woodbridge*, 954 F.2d at 1237.

### F. Attorneys' Fees

 Virostek argues that the district court erred in denying her motion for attorneys' fees and costs. This court reviews a district court's decision on a motion for attorneys' fees for abuse of discretion. *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir.1994).

In rendering a decision on attorneys' fees and costs, the district court relied on the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), and the Sixth Circuit's decision in *Cramblit v. Fikse*, 33 F.3d 633 (6th Cir.1994). In *Farrar*, the Supreme Court held that, "[w]hen a plaintiff recovers only nominal damages because of [her] failure to prove an essential element of [her] claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115, 113 S.Ct. 566 (citation omitted). Citing *Farrar* and *Cramblit*, the district court held that Virostek was not entitled to attorneys' fees and costs because she had failed to prove compensable injury which was an essential element of her claim for compensatory damages. J.A. at 438–42 (noting that the jury awarded her nominal damages only and that the district court had already determined that she was not entitled to receive any backpay).

 For the reasons asserted by the district court, we affirm the decision to deny Virostek's request for attorneys' fees. *Farrar*, 506 U.S. at 115, 113 S.Ct. 566; *Cramblit*, 33 F.3d at 635–36. Contrary to Virostek's assertions, we do not believe that the district court was incorrect in relying on *Farrar* and *Cramblit*. Virostek's argument that *Farrar* and *Cramblit* are not applicable to this case because they

---

**8.** We address Virostek's request for punitive damages under Ohio law only. Virostek's proposed jury instruction for punitive damages refers only to Ohio law. Furthermore, Liberty Township may not be held liable for punitive damages under Title VII, *see* 42 U.S.C. § 1981a(b)(1); *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir.1998), nor may Wardrop, *see Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997); *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 788 n. 1 (6th Cir.2000). Additionally, we address Virostek's request for punitive damages only as it applies to Wardrop, as Liberty Township may not be held liable for punitive damages for sex discrimination in violation of Ohio Revised Code § 4112.02 under Ohio law. *See* OHIO REV.CODE § 2744.05(A); *Lindow v. City of North Royalton*, 104 Ohio App.3d 152, 661 N.E.2d 253, 258 (Ohio Ct.App. 8th Dist.1995); *Spires v. City of Lancaster*, 28 Ohio St.3d 76, 502 N.E.2d 614, 615 (Ohio 1986).

involved § 1983 actions with a request for attorneys' fees under 42 U.S.C. § 1988(b),[9] and not a request under Title VII's general attorneys' fees provision, 42 U.S.C. § 2000e–5(k),[10] is unpersuasive. As both the Supreme Court and this circuit have noted, the standard for awarding attorneys' fees is essentially the same under § 1988 and § 2000e–5(k), as the provision for attorneys' fees under § 1988 was patterned after that in § 2000e–5(k). *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Smith v. Smythe–Cramer Co.,* 754 F.2d 180, 183 (6th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *see also Griffith v. State of Colo., Div. of Youth Servs.,* 17 F.3d 1323, 1328 (10th Cir.1994) (noting that the "standard for the award of attorneys' fees under § 1988(b) is the same as that under § 2000e–5(k)"). *But see Webb v. County Bd. of Educ. of Dyer Cty.,* 715 F.2d 254, 256–57 (6th Cir.1983), *cert. denied,* 466 U.S. 935, 104 S.Ct. 1906, 80 L.Ed.2d 456 (1984) (concluding that, unlike Title VII, whose plaintiffs are required to exhaust administrative remedies, § 1988 does not allow attorneys' fee awards for optional administrative work under § 1981). We see no differences between the two fee provisions that would require applying *Farrar* to claims for attorneys' fees under § 1988 and disregarding *Farrar* with regard to claims for attorneys' fees under § 2000e–5(k).

 Additionally, for the reasons asserted by the district court, we affirm the decision to deny Virostek's request for costs. Although costs are generally awarded to a prevailing party as a matter of course, the district court maintains discretion in choosing to tax the costs of litigation against a losing party under Rule 54(d) of the Federal Rules of Civil Procedure. *Jones v. Continental Corp.,* 789 F.2d 1225, 1233 (6th Cir.1986). The district "court's discretion is more limited than it would be if the rule were nondirective," and "it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party." *Goostree v. Tenn.,* 796 F.2d 854, 863–64 (6th Cir.1986), *cert. denied sub nom. Goostree v. Montgomery Cty. Quarterly Ct.,* 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987) (quotations omitted). This circuit has identified a number of circumstances under which a district court's denial of costs would be a proper exercise of discretion, including cases, such as this one, where the district court has found "the prevailing party's recovery [to be] so insignificant that the judgment amount[ed] to a victory for the defendant." *White & White, Inc. v. American Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir.1986); *see also Farrar,* 506 U.S. at 120, 113 S.Ct. 566 (O'Connor, J., concurring) ("And when Congress en-

---

9. Section 1988(b) provides:

 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq .], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

42 U.S.C. § 1988(b).

10. Section 2000e–5(k) provides:

 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k).

acted § 1988, the courts would deny even a prevailing party costs under Federal Rule of Civil Procedure 54(d) where the victory was purely technical."); *Pino v. Locascio,* 101 F.3d 235, 237–38 (2d Cir. 1996); *Milton v. City of Des Moines, Iowa,* 47 F.3d 944, 946–47 (8th Cir.), *cert. denied sub nom. Miller v. Heller,* 516 U.S. 824, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995).[11] In light of this factor set forth in *White* and the fact that Virostek recovered no more than $1 in nominal damages in this case, we also do not believe that the district court abused its discretion in denying her request for costs. In sum, the district court did not abuse its discretion in denying Virostek's request for attorneys' fees and costs.

## G. Exclusion Of Certain Sex–Discrimination Evidence

■ Virostek argues that the district court abused its discretion in excluding some of the evidence concerning her reassignment claim. We review a district court's evidentiary rulings for abuse of discretion. *General Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). In light of our rulings above, we conclude that the district court did not abuse its discretion in excluding evidence.

## H. Wardrop

■ Wardrop cross-appeals, claiming that the district court erred in denying his motion for a judgment as a matter of law. Specifically, Wardrop argues that the reassignment to the patrol officer position was not an adverse employment action. He

further argues that, even if it were an adverse employment action, the law precluded a verdict against him on Virostek's sex discrimination claim under the same actor inference. *See Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995), *cert. denied,* 516 U.S. 1078, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996).

We conclude that the district court properly denied Wardrop's motion for judgment as a matter of law. First, we believe that Virostek established that her reassignment to the patrol officer position was an adverse employment action. At trial, Virostek presented evidence showing that, although her wages stayed the same after the reassignment, her duties materially changed in a manner that seriously impacted the conditions of her employment. *See Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996) (suggesting that reassignments with material work changes may constitute adverse employment actions). Specifically, Virostek presented evidence showing that the duties of a patrol officer required more dangerous and physical duties than those of a detective and involved less paper work and fewer "intellectual" tasks than senior police officers generally desire.

■ Furthermore, Virostek raised a genuine issue of material fact regarding whether Defendants' asserted reasons for reassigning Virostek to a patrol officer position were a pretext for discrimination. According to Wardrop, he reassigned Virostek to a patrol officer position because of Virostek's apathy and derogatory public comments, her failure to conduct any

---

**11.** Contrary to Virostek's assertions, we do not believe that *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), suggests that the district court abused its discretion in denying her attorneys' fees and costs. *Buckhannon* addresses the question of who is a pre-

vailing party, not the reasonableness of awarding or denying attorneys' fees and costs. Also, we do not address Virostek's claim regarding attorneys' fees under Ohio law because Virostek did not request attorneys' fees under Ohio law. *See* Virostek's Br. at 49–52; Virostek's Reply Br. at 29–31; *see also* J.A. at 273–85, 304–10, 350–62.

youth court sessions in excess of one year, a breakdown in efficiency and communication between the public school system and the police department, and Virostek's failure to enhance the overall effectiveness of the juvenile bureau. However, we believe that the evidence that Virostek's replacement in the juvenile detective position after the reassignment, Saraya, was allowed to eliminate the youth court program soon after he began the position created a jury question regarding Wardrop's asserted reasons for the reassignment because the elimination of this program not only extinguished a major criticism of Virostek, her failure to conduct a sufficient number of youth court programs, but also had the potential to facilitate a further breakdown of communications between the public schools and the department and the overall effectiveness of the juvenile bureau.

Finally, given the time gap between Virostek's first promotion in 1992 and her reassignment in 1995, the fact that Wardrop was the officer who first promoted Virostek in 1992 does not negate any of the factual questions raised about the reasons for her reassignment. In sum, we believe that the district court properly denied Wardrop's motion for judgment as a matter of law.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.